MIDGETT *v.* STATE

[No. 10, September Term, 1960.]

*Decided October 20, 1960.*

The cause was argued before BRUNE, C. J., and HENDERSON, HAMMOND, PRESCOTT and HORNEY, JJ.

*Leonard J. Kerpelman* for the appellant.

*James H. Norris, Jr., Special Assistant Attorney General,* with whom were *C. Ferdinand Sybert, Attorney General, Saul A. Harris, State's Attorney for Baltimore City,* and *James W. Murphy, Assistant State's Attorney,* on the brief, for the appellee.

BRUNE, C. J., delivered the opinion of the Court.

The appellant, Curtis E. Midgett, was indicted on charges (a) of kidnapping (Indictment No. 1157 of 1959), (b) of

armed robbery and simple assault (as well as other charges abandoned by the State at and after Midgett's first trial, below mentioned) (Indictment No. 250 of 1957), and (c) of conspiracy (Indictment No. 2120 of 1958), and was tried in a single proceeding on all of these charges before Judge Allen and a jury in the Criminal Court of Baltimore. He was (a) found guilty under both counts of the kidnapping indictment (kidnapping with intent to carry the victim within the State and kidnapping with intent to conceal him within the State), (b) found not guilty of armed robbery but guilty of assault, and (c) found guilty of conspiracy. His motion for a new trial was denied and he was sentenced to a total of thirty-five years' imprisonment—thirty years for kidnapping and five years for conspiracy, these sentences to run consecutively, and five years for assault, this sentence to run concurrently with the others. He appeals.

The first indictment pertained to the kidnapping of one Charles W. Zeller, an officer of the Baltimore City Police Department, the second to the disarming of that officer, and the third to a conspiracy to rob employees of a chain of restaurants. The execution of that plan was interrupted by the police officer's arrival on the scene of intended action.

The present appeal is a sequel to *Midgett v. State,* 216 Md. 26, 139 A. 2d 209. In that case Midgett's prior convictions on charges of kidnapping and of armed robbery were reversed and a new trial on each charge was awarded. Midgett, one Morris Ruckle and one John R. Davis had been indicted and tried together in 1957 under an indictment (No. 446 of 1957), which undertook to charge them with kidnapping. The opinion of this Court commented upon the inadequacy of that indictment to support some of the instructions given. Midgett, Ruckle and Davis were also charged in separate indictments against each of them with robbery with a deadly weapon, etc., that against Midgett being No. 250 of 1957, on which he was retried in the present case. All three were found guilty at the original trial on the kidnapping and robbery charges. Davis did not appeal. Midgett and Ruckle did. No conspiracy indictment was involved in that trial.

Following the remand Midgett moved to dismiss the kid-

napping indictment (No. 446 of 1957), which had been criticized but not actually held invalid by this Court on Midgett's first appeal. After full argument of the matter, Judge Allen, on March 9, 1959, granted the motion and dismissed that indictment. He directed, however, that Midgett be held in substantial bail (which he did not furnish) pending re-indictment within a limited time. Within that time Midgett and Ruckle were re-indicted by Indictment No. 1157 of 1959, and Midgett was tried thereunder. Midgett also filed motions to dismiss the other indictments against him, but these were denied.

On the above motions, Midgett was represented, at his request, by the same court appointed counsel who had represented him on his first appeal. Such counsel was appointed only for this purpose. Otherwise, Midgett flatly declined the appointment of counsel on more than one occasion, including his rearraignment at the start of the trial out of which this appeal grows. He elected to try his own case. On this appeal he is again represented by court appointed counsel (apparently appointed at Midgett's request or with his consent), who has discharged his duties with diligence and ability.

The facts as developed in the present cases are essentially the same as those on Midgett's first appeal and are fully set out in this Court's opinion in that case, which was written by Judge Horney. (See 216 Md., bottom of page 30—top of page 34). They will not be here repeated at length. In brief, there is evidence showing: (1) that Midgett, Ruckle and Davis entered into a conspiracy, originally made in Pennsylvania which they renewed and attempted to carry into effect in Maryland, to rob employees of the White Coffee Pot restaurants in Baltimore of cash receipts of such restaurants; (2) that in furtherance of this plan, on the night of January 16, 1957, they went to a vacant lot adjacent to the commissary of the White Coffee Pot in Baltimore, intending to rob a collector for the restaurants there; (3) that they were interrupted in this enterprise by Officer Zeller who arrived on the scene alone in a police car; (4) that while he was investigating their presence and was inquiring of Midgett as to their purpose in being on the lot and was asking to see Midgett's

driver's license (Midgett then being at the wheel of Ruckle's car), Ruckle appeared from a place beside the car where he had been hiding, covered the officer with a 38 pistol and backed him up against a wall; (5) that Midgett, or Midgett and Davis, acting in accordance with Ruckle's instructions, then disarmed the officer, taking his belt, holster, pistol and flashlight, which they placed in Ruckle's car; (6) that Midgett, Ruckle and Davis then put Officer Zeller in Ruckle's car, drove him out into the country, bound his hands and feet, gagged him, tied him to a tree and left him there.

This appeal presents a number of questions. The first is whether or not Morris Ruckle, Midgett's codefendant in the kidnapping and conspiracy cases, was properly allowed to refuse, on the ground of possible self-incrimination, to testify on behalf of Midgett. A consideration of this question calls for some examination of Ruckle's status with regard to these charges. Following their original trial both Midgett and Ruckle appealed. While the appeal was pending, Ruckle proceeded, of his own motion, to dismiss his appeal. Following the reversal of Midgett's convictions and the award of a new trial as to both the kidnapping and robbery charges, Ruckle sought through Post Conviction Procedure Act proceedings to obtain his own outright release. Judge Tucker held that Ruckle was entitled to relief against the judgment rendered at the first trial, since Ruckle, like Midgett, had been "denied the absolute right to be present at every stage of his trial from the time the jury is impaneled until it reaches a verdict or is discharged." He concluded that an appropriate order under the Post Conviction Procedure Act (Code, Art. 27, Sec. 645 G) was to set aside the judgment and sentence against Ruckle and to grant him a new trial, which was the same relief as had been granted to Midgett by this Court, but that Ruckle was not entitled to the preferred status for which he contended. Ruckle applied for leave to appeal from Judge Tucker's order entered in accordance with this decision and this application was pending when Midgett was retried in June, 1959. This Court agreed with Judge Tucker's conclusion and accordingly denied Ruckle's application for leave to appeal. *Ruckle v. Warden,* 220 Md. 683, 155 A. 2d 69. [This Court suspended

the operation of its order to allow Ruckle time to apply to the Supreme Court of the United States for a writ of certiorari, which was denied on October 10, 1960. 29 U. S. L. Week 3104.]

Midgett's chief ground of complaint as to the allowance of Ruckle's claim of privilege is that Ruckle was not sworn and that he could not claim the privilege except under oath. It would have been the proper practice first to have had him called to the stand and sworn. His interrogation should then have proceeded to the point where he claimed the privilege as a ground for not answering a question. *Chesapeake Club v. State*, 63 Md. 446; *Adams, et al. v. State*, 200 Md. 133, 88 A. 2d 556; 3 Wharton, *Criminal Evidence* (12th Ed.), p. 37. Indeed, the latter work states "The privilege can only be claimed after the witness has been sworn and at the time the questions are put." *People v. Weiger*, 100 Cal. 352, 34 P. 826, is cited in support of this statement. That case seems to hold that this is the only manner in which the witness can effectively invoke the privilege, and that if he fails to claim the privilege in this way and proceeds to testify, the testimony so given is deemed voluntary and may be used against him.

The bases for the rule are (i) that the witness has the right to determine whether or not to invoke the privilege, not that the rule is for the exclusion of unreliable evidence, and (ii) that the court must be in a position to determine whether the claim of privilege is in good faith or lacks any reasonable basis. *Butz v. State*, 221 Md. 68, 156 A. 2d 423, makes the first basis for the rule abundantly clear. We there overruled a holding in the *Chesapeake Club* case, which had permitted the defendant to take advantage on appeal of the erroneous denial of the privilege of a witness. The rule adopted in the *Butz* case that the privilege is that of the witness and not of the defendant and that the defendant cannot take advantage of the privilege if the witness does not, is in accord with the English rule and the majority rule prevailing in this country.[1]

---

1. Since Ruckle undertook to claim the privilege for himself, we are not confronted with the question on which there is some division of opinion as to whether anyone other than the witness himself (his counsel, for example) can assert the claim of privilege.

The instant case presents the converse of the situation in both the *Chesapeake Club* and the *Butz* cases in that in each of those cases the testimony was admitted despite the defendant's objection, but in the instant case the privileged testimony was excluded despite the defendant's effort to obtain it. The rule of the *Butz* case is, therefore, not applicable here. Our question is whether the defendant Midgett has been improperly deprived of whatever benefit he might have obtained from the testimony of Ruckle.

There is no proffer of what Ruckle's testimony would have been. Apparently it was Midgett's aim to show that at the time when the police officer surprised the would-be robbers, he, Midgett, acted under compulsion from Ruckle in disarming the police officer and in helping to kidnap him. (By no stretch of the imagination could such evidence have had any bearing upon the charge of conspiracy to rob the restaurant employees.) Midgett may also have wished to support his contention (which might be a matter of extenuation but certainly not of innocence) that he, Midgett, did not wish to take the officer's life and that he gave him back his own (the officer's) overcoat and also gave him a comforter to reduce the likelihood of his freezing to death when Midgett and his companions left him bound hand and foot, gagged and tied to a tree, on a lonely road on a bitterly cold winter night. Assuming that Midgett sought to establish each and all these contentions through Ruckle's testimony, we think it too clear for argument that testimony to this effect would have tended to incriminate Ruckle, if he should be tried again on charges of armed robbery and of kidnapping. This, as we have seen, was at least a possibility at the time of Midgett's trial. Ruckle was named a codefendant with Midgett in the very indictment on which Midgett was then being tried on kidnapping charges; the indictment against him on charges of armed robbery was a companion case to an almost identical indictment on which Midgett was then being tried. This possibility of a second trial for Ruckle was developed in a rather extended colloquy. The genuineness of Ruckle's danger of self-incrimination was quite apparent, and the second requirement for invoking the privilege thus was met.

Midgett contends that Ruckle did not directly invoke his privilege against self-incrimination in his colloquy with the trial judge which led up to his being excused from testifying. We do not agree with this contention. When Ruckle was produced in court Midgett stated that he was going to call him as a witness. The prosecuting attorney then stated that Ruckle had not testified in the case at any time and that he could testify if he wanted to. He then suggested that Ruckle should be "instructed as to his constitutional rights" and added that he then had a case pending in the Court of Appeals. The court quite properly proceeded to advise Ruckle of his privilege against self-incrimination. A colloquy followed which related in part, as above mentioned, to the status of Ruckle's case then pending in this Court and in part to the circumstances under which Ruckle would be willing to testify. He was willing to do so as to what he called the "legal charges" against Midgett. In his view, the kidnapping indictment against Midgett and himself was not valid. The trial judge informed Ruckle that he had held the indictment valid against objection by Midgett and that he would not then hear argument in Ruckle's own case. The court then renewed the inquiry as to whether or not Ruckle wanted to testify and to waive his constitutional right not to, and the judge carefully pointed out that Ruckle might be asked questions and give answers which might incriminate him and which might be used against him in a retrial of his own case. Ruckle replied: "Well, in that case, then, I won't be able to testify because it would cause irreparable damage to my case." This, we think, was sufficient to state a claim of privilege and we also think that the trial judge was correct in so interpreting it, as he did when he proceeded to rule that Ruckle had a right not to testify, since he had been made a defendant in a retrial of the case and what he might testify to might affect him adversely or do him irreparable damage.

It is true that Ruckle had not actually been sworn. We think, however, that it is clear that the witness did elect to stand upon his privilege against self-incrimination and that the court was satisfied that the claim had a substantial basis. Both of the underlying requirements for invocation of the rule

have thus been satisfied. Although it would have been better practice that the witness should first have been put under oath, we cannot find any prejudice to the defendant from the manner in which this question was handled. The oath of the witness would have added nothing to the information (including the actual indictment against both Midgett and Ruckle) which was before the court as to the risk to which Ruckle claimed to be exposed, nor is there any room for doubt that Ruckle himself desired and elected to rely on the privilege. We may add that we find nothing to suggest that if Ruckle had first been sworn, the court's ruling on the question of privilege would not have been correct. In the absence of any showing or suggestion of prejudice we see no reason for reversal and remand for a new trial on this question.

Another major contention of the appellant is that his conviction should be reversed because at several adjournments during the course of the trial when the jury was allowed to separate, the court did not caution the jurors against discussing the case. The appellant made no objection on this ground in the trial court. Whether or not he thereby lost any right to have this question reviewed at all in this Court, we find his contention unsustainable. (As to reviewability, cf. *Hall v. State,* 223 Md. 158, 177, 162 A. 2d 751, 762, a death sentence case, and also *Jackson v. State,* 223 Md. 105, 109, 163 A. 2d 120, 122.)

The appellant does not challenge the power of the trial court, in its discretion, to permit separation of the jury prior to submission, nor does he contend that the court did not permit the separations here attacked. His contention is based upon the alleged absence of admonitions.

It may be well to state at the outset that separation of the jury, at the discretion of the trial court, is permitted by statute. Under Code (1957), Art. 51, Sec. 29, the "jurors sworn to try a criminal action may, at any time before the submission of the case to the jury, in the discretion of the court, be permitted to separate or may be kept in charge of proper officers." The statute so providing was first enacted by Ch. 385 of the Acts of 1935 and was originally enacted as to both civil and criminal cases. As to civil cases it was superseded by what

is now Rule 543a 8 of the Maryland Rules, and it was amended by Ch. 399 of the Acts of 1957 to delete the reference to civil cases after the adoption of the Rule just referred to, which Rule became effective January 1, 1957.

It is to be noted that the statute made no distinction between civil and criminal cases and that the fact that the two types of cases are now separately dealt with—one by court rule and the other by statute—has not produced any difference in the terms of the rule applicable to either. More significantly, it is to be noted that the statute makes no distinction between different types of criminal cases. The rule is the same for capital cases, for non-capital felonies and for misdemeanors. Separation of the jury prior to submission is permitted in each type of case. It is also quite plain that the statute itself does not require that any caution be given by the trial court to the jury.

It is, however, our established practice that an admonition be given by the trial court to the members of the jury, prior to their separation, against discussing the case with others or among themselves. Unquestionably, such a specific admonition would have been given, if requested, just as the trial judge of his own motion gave such an admonition on several occasions. We shall consider the matter first from the point of view of the statements actually made and cautions actually given by the trial court.

The case lasted from Monday, June 15, through Friday, June 19, 1959, was adjourned over the week-end and concluded on Monday, June 22. No caution was given or asked at the time of the luncheon recess on the opening day, which took place just after the jury had been empanelled. During that afternoon the prosecution's opening statement was made, the defendant reserved his, and the first witness, the kidnapped officer, was heard in part. At the conclusion of the day's proceedings no caution was given or asked. The first specific caution was given during the proceedings on the second morning when the court was about to go into a hearing out of the presence of the jury as to the admissibility of a statement or confession made to the police by Midgett. The court then told the jury that if the matter should appear likely to

run for a little while, he would send word to the jury to go out for lunch without returning to the courtroom and added: "but if I do I want to caution you now not to discuss this case with anyone during the recess, nor amongst yourselves." He elaborated upon the latter point, stating that it was "because you are supposed to discuss this case only when it is completed and it is turned over to you when you retire to the jury room for a verdict." Briefer cautions were given prior to the luncheon recesses on June 17 and 22, but no cautions are shown by the transcript prior to other adjournments. There is no claim or suggestion that there was any separation of the jury after the case had been submitted at the conclusion of the court's instructions.

In addition to the above cautions prior to recesses or adjournments, we note that at the outset and in the early stages of the trial, the trial judge had made it clear to the jury that the case was to be decided solely on the evidence adduced in court. First, in examining the witnesses on their voir dire, he inquired whether any of the prospective jurors, as a result of publicity given the case, had formed any opinion as to the guilt or innocence of the defendant. (None indicated that he had.) Second, during the prosecution's opening statement, upon an objection made by Midgett to a reference to a "statement" made by Midgett to the police, the judge advised the jury that nothing said in an opening statement constituted evidence and that "the only evidence upon which you are to judge this case is the evidence you hear from the witness stand given by witnesses under oath." Third, at the conclusion of the State's opening statement and after the defendant had declined to make one, the court spoke of the fact that reference had been made to a prior trial and stated that the jury was not concerned and was not to be concerned with the prior conviction or the reversal, and concluded these remarks by saying: "You are to judge this case purely on what you hear from the witness stand and from such evidence as is admitted by me either from the defense or from the State."

Thus through the admonitions given during the examination on the voir dire and in connection with the opening statement on behalf of the State, as well as through admonitions

given prior to several recesses or adjournments, the court made it clear to the jury that the cases were to be decided solely on the evidence adduced in court and on the whole of such evidence. Thus the main objectives sought by the usual admonitions—to avoid any outside influences and to cause the jury's final verdict to be based solely on the evidence and on the whole of the evidence presented in court—were, we think, sufficiently expressed and substantially accomplished (so far as they can be accomplished by admonition).[2] We accordingly conclude that there was a substantial compliance with the rule as to admonitions and that the appellant's contention for that reason is not sustainable.

If, however, we should assume that admonitions were lacking or were not sufficient prior to any one or more recesses or adjournments, we think no objection based thereon can now be successfully raised.

There is a very full annotation in 34 A.L.R. 1115 entitled, "Separation of jury in criminal case," which is supplemented in 79 A.L.R. 821 and in 21 A.L.R. 2d 1088. Separation of the jury prior to submission is permitted under proper safeguards in most jurisdictions. See *Holt v. United States,* 218 U. S. 245, *McHenry v. United States,* 51 App. D. C. 119, 276 F. 761, 34 A.L.R. 1109, and the above annotations, 34 A.L.R. at pp. 1124-1143, 79 A.L.R. at pp. 823-844 and 21 A.L.R. 2d at pp. 1093-1094. As was said in the *Holt* case, in discussing separations of the jury particularly with reference to the possibility of jurors reading newspaper articles pertaining to the trial (218 U. S. at 251) : "If the mere opportunity for prejudice or corruption is to raise a presumption that they exist, it will be hard to maintain jury trial under the conditions of the present day."

We think it clear that under Code (1957), Art. 51, Sec. 29, *supra,* under the *Holt* case (and many others referred to in the above annotations) and under *La Guardia v. State,* 190 Md. 450, 58 A. 2d 913, the separation of the jury is permissible, in the discretion of the trial court, prior to submission,

---

2. In some instances, of course, the evidence presented in court may properly be supplemented, as by a view of the premises under court supervision.

and that prejudice is not to be presumed from such separation simply because of the possibility of influence or contamination through outside contacts. The next question (assuming an absence or lack of adequate caution) is whether such a defect (a) presents an irregularity which is waived if not objected to in the trial court or (b) presents a situation in which either the State must rebut or the defendant must show prejudice. We think that it does not present an error which is so fundamental that it could not either be waived or be disposed of as a matter of proof or of the burden of proof.

In *Kennard v. State,* 177 Md. 549, 10 A. 2d 710, which was a misdemeanor case, the trial court permitted a separation of the jury after the verdict had been agreed upon, but before it had been rendered. This court viewed the matter as a question of prejudice, *vel non,* and not as a matter of a denial of a fundamental right, and though expressing disapproval of permitting separation after submission, it found that no prejudice to the defendant has resulted and upheld the conviction. The court commented on the difficulty which a defendant under restraint would have in knowing of the conduct of the jury and in proving prejudice, if it existed. We assume that a like difficulty in case of separation prior to submission was also known to the legislature when it passed the statute permitting such separation.

Whatever its origin may be, a distinction between separations during the trial and after submission is generally recognized and is clearly made by our statute. The *Kennard* case is carefully limited to a decision as to separation after submission. As an example of the different degrees of seriousness with which the two types of separation are regarded, see two comparatively recent English cases, in each of which Lord Goddard, Chief Justice, delivered the opinion: *Rex v. Neal,* C.C.A., [1949] 2 K.B. 590, and *Reg. v. Newland,* C.C.A., [1954] 1 Q.B. 158. Each of these cases refers to *Rex v. Ketteridge,* C.C.A., [1915] 1 K.B. 467, cited by Judge Offutt in the *Kennard* case.

In *La Guardia v. State, supra,* the questions of prejudice from separation of the jury and of prejudice from a communication between the court and jury out of the presence of the

accused were treated quite differently. As to the latter it was stated (in part) that "if the record shows error by such communication, but does not show whether or not the error was prejudicial, it is presumed to be prejudicial and requires a reversal." 190 Md. at 458. (On the facts of the case, the court found that the record showed that the communication in question could not have prejudiced the appellants.) As to separation, the court (at p. 456) refused to recognize any presumption of prejudice and said, on the contrary: "The complaining party relying upon a violation of the rule against separation of jurors has the burden of showing that the protection intended to be afforded by the rule was lost; * * *." The specific holding was that an emergency separation of a juror from the other members of the panel because of sudden illness, where the circumstances indicated that he had no communication with any outsider except a physician, was not such a separation as would invalidate the verdict.

Though in some states where, unlike Maryland, the statute authorizing separation of the jury requires that a caution against discussing the case shall be given before separation of the jury, the view is held that failure to admonish them creates a presumption of prejudice (see the Kansas and Arkansas cases cited in 34 A.L.R. at pp. 1153-1155), a different view is taken in other states having such statutes and "[w]here the defendant does not object to the failure of the court to give the proper admonition, it will be presumed, on appeal, that the error did not work any substantial prejudice to his rights." (Ibid., p. 1155.) In other words, failure to object waives any lack of admonition. See *Yarbrough v. State,* 13 Okla. Crim. Rep. 140, 162 Pac. 678 and *State v. Morris,* 58 Ore. 397, 114 Pac. 476, there cited which support this statement. The Supreme Court of Arizona, in *Quayle v. State,* 19 Ariz. 91, 165 Pac. 331, expressed a similar view, but presumed compliance with the rule by the trial court, the record being silent. See also the supplemental annotation in 21 A.L.R. 2d 1093, especially § 17 thereof, pp. 1112-1113, dealing with waiver of the right to have the jury admonished and cases therein cited which are commented upon below. In *State v. Lewis,* 59 Nev. 262, 91 P. 2d 820, it was held that any objection to fail-

ure to give the statutory admonition was waived where the question was raised neither at the trial nor on motion for a new trial, the latter being held to constitute the waiver. In *Langley v. State,* 53 Okla. Crim. 401, 12 P. 2d 254, it was held that there was a waiver of the right to insist upon the full statutory form of admonition where no objection was made at the trial to an abbreviated form. See also the statement (though this was not the holding of the case) in *Hepp v. State,* 46 Ohio App. 360, 188 N. E. 664, that failure to object at the trial to the admonition not being given at the time of a separation prior to submission would waive the objection. We think that the rule of the cases cited is applicable *a fortiori* in this State, where we have no statutory requirement for the giving of an admonition.

We turn next to the application of this rule as to waiver to the instant case. We are aware that the appellant, Midgett, was not represented by counsel at the trial, but that was a matter of his deliberate choice. He was no tyro in court proceedings. Whether it was because he thought he could try his own case better than counsel could try it for him, or because of some other reason, we are not advised, but the fact is that he persistently declined the assistance of counsel in the trial of the present charges against him and elected to try his own case.[3] We think that one who makes such a deliberate choice should be subject to the same rules with regard to the reviewability or the waiver of questions not raised in the trial court as one who is represented by counsel. Cf. *Jackson v. Warden,* 218 Md. 652, 654, 146 A. 2d 438; *Jackson v. State,* 223 Md. 105, 109, 163 A. 2d 120. And see *Smith v. United States,* 216 F. 2d 724 (C.A. 5). A contrary rule would lead to endless delay and confusion in the trial and appeal of criminal cases and hence in the administration of justice through the reasonably prompt enforcement of the criminal law.

---

[3]. After Midgett's conviction in these cases, the trial court inquired whether or not he wanted counsel appointed to argue the motion for a new trial which Midgett wished to file. Midgett replied, "I didn't do too good myself and would like to make the request for counsel * * *."

In the present case no objection was made to any separation of the jury during the trial. We think that by failing to raise the question during the trial, the appellant has waived any objection to the absence or insufficiency of admonitions to the jury.

We are also of the opinion that under the rule of the *La Guardia* case, no presumption of prejudice arose and that since no actual prejudice has been shown the appellant could not succeed on this objection, even apart from waiver.

For each of the three reasons above set forth—substantial compliance, waiver, and an absence of any showing of prejudice, we find the appellant's contention as to admonitions or the lack thereof not to be sustainable.

The appellant has raised a number of other contentions, none of which we find to be well founded. We find no error in the admission of a prior inconsistent statement by Davis, one of Midgett's codefendants at the original kidnapping trial, made at that trial with regard to the manner in which Midgett had acquired a pistol.

There was also no error in the trial court's refusal to permit Midgett to try an experiment in the courtroom to test the credibility of the kidnapped officer. Midgett wanted to tie him up in the same manner as on the night of the crime, using a similar rope, to see if the officer could break it, as he said he had done to free himself. The matter was within the discretion of the trial court. 2 Wharton, *Criminal Evidence* (12th Ed.), p. 644. The conditions existing at the time and place of the kidnapping, including the officer's desire to break free, could not have been reproduced in the courtroom.

As to the exclusion of witnesses, Midgett makes two complaints. One is that one police officer telephoned to the home of another to have the latter come in to testify. The trial court went into the matter and found that nothing improper had been said. On another occasion two police officers entered the courtroom during the time that witnesses were segregated and heard some testimony on a subject on which they were later to testify. They were unaware of the order when they entered and their entrance was unknown to the prosecuting attorney. They were removed promptly when their

presence was noted. We find no such prejudice as would call for a reversal.

Several rulings on the admissibility of evidence were also challenged, but we find no error in them. One pertained to an effort to elicit hearsay testimony as to something claimed to have been said by someone, not clearly identified, months after the crime. Another question objected to and ruled out sought to elicit from the witness Davis a hearsay statement alleged to have been made by Ruckle, which was so far removed from the time of the offense that it could not have constituted a part of the *res gestae,* and another sought to elicit from Davis why, if Ruckle had made a certain remark, he would have made it. An objection to a photograph of the kidnapped officer showing his appearance at about an hour and a half after he had freed himself is without force. Another contention based upon the sustaining of an objection to an argumentative and somewhat confused question is likewise without merit.

We find the appellant's objections as to the proof of the chain of custody in connection with showing the voluntary character of his confession also untenable. The issue of the voluntary nature of the confession was first passed upon by the court to determine its admissibility and was thereafter submitted to the jury under appropriate instructions.

The appellant's contention that he was denied compulsory process for his witnesses is also without substance. For the most part this rests upon the fact that his wife had left Maryland and had removed to Florida. This was unknown to the State's Attorney and apparently to the appellant until it was shown at the trial on the return of a summons which the Assistant State's Attorney directed to be issued (in accordance with Midgett's request). Midgett's contention is that by reason of the fact that both Maryland and Florida have adopted the Uniform Act to Secure the Attendance of Witnesses from Without the State, the State was under obligation to procure her attendance. Suffice it to say that Midgett did not make any effort to comply with the requirements of the Act, even by showing that his wife would be a material witness, since there was no proffer of her testimony. We do

not reach the question whether the State would have any obligation to pursue the prospective witness, if such a showing had been made.

No exceptions were taken to the advisory instructions given the jury. We may, however, review any "plain error" therein material to the rights of the accused. Md. Rules, Rule 739g. We likewise find no such error as to the instructions pertaining to alleged compulsion. If there was any error in not specifically applying the instructions as to alleged compulsion to the robbery and assault charge as well as to the kidnapping charge, it was not prejudicial since the jury evidently rejected the defendant's contention on the facts as to the kidnapping charge. We also think that the matter of the destruction of the rope offered in evidence at the first trial was fully gone into and was explained as a matter of inadvertence or carelessness, but that there was no basis for an instruction that some inference unfavorable to the credibility of the State's evidence should have been drawn therefrom.

Finally, we see no need for informing the jury of the fact that the kidnapping charge carried the death sentence as a possible penalty. The penalty for kidnapping actually imposed was imprisonment for a term not exceeding that authorized by the statute.

*Judgments affirmed.*