*Gerald Hyman v. State of Maryland*, No. 18, September Term, 2018

**SEX OFFENDER REGISTRATION – WAIVER IN CORAM NOBIS PROCEEDINGS –** The waiver provision of the Uniform Postconviction Procedure Act, Maryland Code, § 7-106 of the Criminal Procedure Article ("CP") (2001, 2018 Repl. Vol.), renders an allegation of error waived "when a petitioner could have made but intelligently and knowingly failed to make the allegation: . . . in a . . . coram nobis proceeding began by the petitioner; . . . or [] in any other proceeding that the petitioner began." This standard also applies to coram nobis proceedings except inasmuch as, under CP § 8-401, the failure to take a direct appeal does not waive a coram nobis claim. Petitioner's failure to raise the issue of the duration of his registration period under the Maryland Sex Offender Registration Act in his 2006 coram nobis petition waived the issue for purposes of his current and potential future petitions.

Circuit Court for Anne Arundel County
Case No. 02-K-00-001866
Argued: November 2, 2018

IN THE COURT OF APPEALS
OF MARYLAND

No. 18

September Term, 2018

_____

GERALD HYMAN

v.

STATE OF MARYLAND

_____

Barbera, C.J.,
Greene
McDonald
Watts
Hotten
Getty,
Adkins, Sally D. (Senior Judge, Specially Assigned),

JJ.

_____

Opinion by Barbera, C.J.

_____

Filed: May 20, 2019

Pursuant to Maryland Uniform Electronic Legal
Materials Act
(§§ 10-1601 et seq. of the State Government Article) this document is authentic.



Suzanne C. Johnson, Clerk

The case before us has its origins in Petitioner Gerald Hyman's conviction on a plea of guilty to the crime of third degree sexual offense. For that crime, Petitioner received a three-year sentence, fully suspended, with three years of supervised probation. As a result of the conviction, Petitioner was required to register as a sex offender.

Since then, Petitioner has engaged in several efforts to obtain relief from registration. None have proved successful. In this matter, his most recent effort, Petitioner has filed his second petition for a writ of coram nobis. He presents two claims in support: he was deprived of the effective assistance of counsel before and at the combined plea and sentencing proceeding, and his guilty plea was involuntary. Both claims concern his asserted ignorance of the duration of his sex offender registration.

The Circuit Court for Anne Arundel County, finding Petitioner's claims to be without merit, denied him coram nobis relief. The Court of Special Appeals affirmed, holding, upon reaching the merits of those claims, that the coram nobis court had correctly denied the petition. We affirm the judgment of the intermediate appellate court, but on a different ground. We hold, for the reasons that follow, that Petitioner waived the grounds underlying both claims and, therefore, we have no cause to address the merits of those claims.

## I.

### Facts and Procedural History

*The plea and sentencing for third degree sexual offense*

In 2000, Petitioner was charged in Anne Arundel County with one count of third degree sexual offense, one count of second degree assault, and one count of fourth degree

sexual offense. All charges stemmed from events taking place on July 14 of that year, when Petitioner, then thirty years old, engaged in purportedly consensual sexual intercourse with a fourteen-year-old female.

A combined plea and sentencing proceeding took place on January 23, 2001, in the Circuit Court for Anne Arundel County. Appearing on behalf of Petitioner was attorney Shawn Gaither.[1] At that time, Petitioner entered a plea of guilty to third degree sexual offense in exchange for the State's agreement to enter a nolle prosequi of the remaining charges and to recommend to the court that Petitioner be sentenced "within the guidelines," which in Petitioner's case was a fully suspended sentence and three years of supervised probation.

In response to the court's questioning, Petitioner said he was thirty years old, married, and employed as an electrician. Petitioner further responded that he understood he had a right to a jury trial at which the State would have to prove his guilt beyond a reasonable doubt; that he was not currently under the effects of alcohol, narcotics or medications; and that he suffered no mental disability that impaired his "understanding [of] what [he was] doing now" in going forward with the plea. At that point, the court found Petitioner to have "affirmatively, knowingly and intelligently waived his right to a trial by jury."

The court then reviewed with Petitioner the pending charges and confirmed that he

---

[1] Petitioner had retained Daryl Jones, an Annapolis attorney, for his defense. The record seems to indicate that Mr. Gaither was a colleague of Mr. Jones. The record does not set forth the reason or reasons why Mr. Gaither replaced Mr. Jones at the outset of the hearing.

was aware that his counsel had discussed the proposed plea agreement with the State; the agreement contemplated Petitioner's plea of guilty to third degree sexual offense; and the State would enter a nolle prosequi as to the remaining charges.

The court, after noting that "the maximum penalty in this case is 10 years imprisonment," restated the terms of the proposed plea agreement, including the State's recommendation that the court impose a sentence of "probation and that [Petitioner] register as a child sex offender" and comply with other conditions. In response to Petitioner's concerns, the court clarified that the condition prohibiting "unsupervised visitation with any minor children" would not limit his access to his own children. The court asked Petitioner if he understood the terms of the plea agreement and the consequences of it. He responded "yes." In response to the court's further questioning, Petitioner denied that he had received any promises or inducements to plead guilty, again said that he had been provided ample time to speak with counsel, and declared once again that he understood that by pleading guilty he was giving up the right to a trial by jury.

The court accepted Petitioner's plea of guilty to third degree sexual offense and then proceeded directly to sentencing. The court heard from the victim's mother, Petitioner's step-father, and Petitioner. Following that, the court sentenced Petitioner to three years' incarceration, all suspended in favor of three years' supervised probation with conditions. The court added:

> As a part of that probation, sir, you are to register as a child sex offender. You are to give blood to the DNA [sic] under Article 88, Section 12(a). You are to have no contact with [T.H.] or any member of her family, and you are to have no illegal contact with minor children. And you are to pay the costs of these proceedings.

At the time Petitioner was sentenced, a person convicted of third degree sexual offense was required to register as a sex offender for life. Pertinent to the matter before us, no mention was made on the record of the plea and sentencing proceeding of the duration of that registration period.

At the close of the proceeding, the court instructed Petitioner to complete an order of probation form. The court pointed out that the order contained, "[i]n addition to the terms and conditions I have told you about, . . . other terms you have to live by." The court added, "If you don't understand any of them, ask me before you leave here today. Otherwise, the Court will assume you understand."

Petitioner's probation order reads, in part, "[A]ll probation is subject to the following conditions." The order lists several generic conditions, has boxes the court may choose to check, and has blank lines at the bottom. On those blank lines, the court wrote, "Special Conditions: (1) Register as a Child Sex offender (2) Give blood for DNA testing under Art 88 § 12A (3) No contact w/victim [T.H.] or her family (4) No illegal contact with minor children." Petitioner signed the order.

In April 2001, several months after the plea hearing, Petitioner completed his initial sex offender registration form. The form includes boxes for the registration terms, labeled either "10 year" or "lifetime." The "10 year" box on Petitioner's registration form was marked, indicating, incorrectly, that he was required to register annually for ten years. In May 2002, Petitioner completed a registration form; again, the box for a "10 year" registration term was marked. In June 2003, Petitioner again completed a registration form;

4

on that occasion, the box for a "10 year" registration term was marked and crossed out, and the box for "lifetime" was marked with Petitioner's initials next to it.

*The 2006 coram nobis proceedings*

On June 24, 2004, Petitioner was convicted in federal court of an unrelated drug offense and was sentenced to seventy-eight months' imprisonment.[2] Petitioner was told of the Federal Bureau of Prisons' Residential Drug Abuse Program ("RDAP"). One feature of the program was the incentive of early release from incarceration. Petitioner learned that as a convicted sex offender, he was not eligible for the early release incentive. That information evidently prompted Petitioner to file, on October 6, 2006, his first coram nobis petition. The petition was not prepared by counsel or Petitioner himself, but rather by a so-called "jailhouse lawyer."

Petitioner advanced two claims in the petition: (1) he received ineffective assistance of counsel before and during the plea and sentencing proceeding, and (2) his plea of guilty to third degree sexual offense was involuntary. Petitioner argued, in particular, that counsel did not prepare adequately for trial, did not afford him a meaningful opportunity to consult prior to pleading guilty, and coerced him to plead guilty. Petitioner asserted that as a collateral consequence of the coerced guilty plea, he was foreclosed from obtaining early release. Petitioner sought the relief of vacatur of the 2001 sexual offense conviction. Among other arguments, he asserted that he was unaware that the victim was below the age of eighteen and that she consented to the sexual activity. Petitioner did not directly

---

[2]  Apparently, Petitioner was not required to register as a sex offender while in federal prison. *See infra* note 5.

complain about the duration of his sex offender registration period. He merely conveyed his understanding at the time of the plea that his sex offender registration was "part of [his] probation package."

The circuit court denied the coram nobis petition without a hearing on May 14, 2007, having found no "evidence [that] Defendant did not clearly understand what he was doing and he entered his plea willingly." The court added that, contrary to Petitioner's complaint, the "statutory sexual offense" of which he was convicted "has no *mens rea* requirement."

Petitioner noted an appeal of the coram nobis court's decision on June 14, 2007. On March 10, 2008, while his appeal was pending in the Court of Special Appeals, Petitioner was released early from federal prison apparently as a result of changes in the Federal Sentencing Guidelines.[3] Upon learning of Petitioner's release, the Court of Special Appeals dismissed the appeal as moot. The court reasoned that "the sole basis" of Petitioner's coram nobis claim was "that his Maryland conviction of third degree sexual offense [made] him ineligible to participate in the RDAP, and that completion of the RDAP

---

[3] Petitioner's 2016 coram nobis petition asserted, and the State did not contest, that Petitioner's sentence was reduced pursuant to 18 U.S.C. § 3582(c)(2). That provision reads, in pertinent part:

> The court may not modify a term of imprisonment once it has been imposed except that . . .
>
> in the case of a defendant who has been sentenced to a term of imprisonment based on a sentencing range that has subsequently been lowered by the Sentencing Commission pursuant to 28 U.S.C. 994(o), upon motion of the defendant or the Director of the Bureau of Prisons, or on its own motion, the court may reduce the term of imprisonment, after considering the factors set forth in section 3553(a) to the extent that they are applicable, if such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

6

would [have made] him eligible for early release from federal incarceration." The intermediate appellate court further reasoned that Petitioner had already obtained the remedy he sought, i.e. early release, and that no exceptions to the mootness doctrine applied. Petitioner did not seek certiorari review of the Court of Special Appeals' decision.

*Subsequent intervening events*

In 2008, Petitioner received from the Department of Public Safety and Corrections a "Notice of Sexual Offender Registration Requirements." The notice stated that Petitioner was required to register every six months for life. Petitioner signed the notice.

In 2010, the Maryland Sex Offender Registration Act ("MSORA") was amended. As a result, Petitioner's period of registration was reduced from "lifetime" to twenty-five years. *See* Md. Code (2001, 2018 Repl. Vol.), § 11-707(a)(4)(ii) of the Criminal Procedure Article ("CP").

*The 2013 declaratory judgment proceedings*

On March 29, 2013, Petitioner, through counsel, filed a "Complaint for Declaratory Judgment and for a Temporary Restraining Order and Preliminary and Permanent Injunctive Relief" in the Circuit Court for Anne Arundel County. Evidently relying on the forms he signed in 2001 and 2002 reflecting registration for ten years, Petitioner claimed, for the first time, that "due to the retroactive application of the sex offender law, [Petitioner] is now required to register for life."[4] Elsewhere, he described the MSORA as applied to

_____

[4] During the hearing on the motion for declaratory judgment in 2013, Petitioner, through counsel, admitted that "[w]hen he took the plea it was life, but nobody told him that." An

(continued . . . )

7

him *ex post facto*. He asked for a judgment that would: (1) declare that MSORA was unconstitutional as applied to him and, consequently, he should be removed from the registry; and (2) enjoin the State from continuing to require him to register and publish his private information online.

After various amended complaints, motions for summary judgment, and a hearing, the circuit court denied Petitioner's motion for declaratory judgment and injunctive relief. The court opined that Petitioner could seek a writ of coram nobis, but declaratory judgment was an inappropriate civil remedy in this circumstance. Calling sex offender registration a "conviction-based obligation," the court disclaimed the "authority to change the statute or declare it inapplicable to [Petitioner]."

The Court of Special Appeals affirmed the circuit court in an unreported opinion, stating:

> Deficiencies in the information conveyed—whether by the court in the guilty plea proceeding or by his counsel prior thereto—regarding registration had no effect on [Petitioner's] obligation to register. The sentencing court had absolutely no authority to waive or modify MSORA's terms. To conclude otherwise would allow a sentencing court to frustrate the important purposes of the statute through inadvertence or oversight at a guilty plea proceeding.

*The instant coram nobis petition*

Proceedings in the coram nobis court

In 2016, Petitioner, through counsel, filed a second Petition for Writ of Error Coram

---

( . . . continued)
affidavit from Elizabeth Bartholomew, the manager of the Maryland Sex Offender Registry, confirmed that at the time of Petitioner's offense and conviction, the registration period for third degree sexual offense was lifetime but that the 2010 MSORA amendments reduced that period to 25 years.

8

Nobis, the subject of this appeal. The coram nobis court interpreted the allegations as presenting two "interrelated constitutional challenges": (1) Petitioner's plea was involuntary; and (2) he received ineffective assistance of counsel. Petitioner contended that both claims arose from his having been coerced into accepting the plea offer as the result of counsel's failure to advise him of the length of his registration period.

Petitioner alleged that he had expected his sex offender registration period to be ten years from his 2001 conviction, and that the ten years, tolled during his four years in federal prison when he was not required to register,[5] should have ended in 2015. Petitioner further alleged that his registration period had been increased to lifetime following his 2008 release

---

[5] Although MSORA is silent as to tolling, Petitioner's 2016 coram nobis petition states that he "does not dispute however, that the 1509 days of federal incarceration tolls the ten year period, and must be added to the original ten years. Thus, his actual period of required statutory MSORA registration should have ended on March 12, 2015." Perhaps the notion that Petitioner's registration was tolled comes from COMAR 12.06.01.10A. That regulation states: "(1) A periodic registration requirement may be suspended only if a registrant is incarcerated at a time when the registrant is required to meet periodic registration requirements. (2) If a balance of a 10-year term of registration remains at the time the registrant is released, the registrant's periodic registration requirements resume as provided under Regulation .04 of this chapter." *See also* COMAR 12.06.01.04C ("If a registrant is reincarcerated during a 10-year term of registration for a crime that does not require lifetime registration under §D of this regulation and, at the time of release, the term of confinement related to the original crime for which registration is required has: . . . (2) Expired, a registrant shall: (a) Resume the periodic registration requirement under Regulation .10 of this chapter for any remaining balance of the original 10-year term of registration . . . .").

As Petitioner's actual registration period at the time of his federal incarceration was lifetime, tolling is only relevant if we were to grant Petitioner the relief of declaring his registration period to be ten years or in light of the changes to MSORA, which reduced his term of registration to twenty-five years. The affidavit of Elizabeth Bartholomew appears *not* to reflect any tolling, as it indicates that Petitioner's registration expires on January 23, 2026, twenty-five years from his sentencing without adding any time for his incarceration.

9

from federal prison and that the 2010 MSORA amendments had increased the frequency of his registration. Petitioner thus argued that because of these heretofore unknown conditions, he could not be forced to register for longer than ten years, except as extended for the period during which he was in federal prison and the requirement of registration was tolled.[6]

The State, in its answer, denied all of Petitioner's allegations. The State argued that Petitioner's claims were waived or barred by laches. The State also disputed the constitutional nature of Petitioner's claims. The State further asserted that Petitioner was unable to demonstrate that a different result would have been obtained in the original criminal case had he known the duration of his registration period; consequently, he could not establish that he faced significant collateral consequences.

In his reply to the State's answer, Petitioner acknowledged that, at the time of his conviction, the law required lifetime registration for his offense. He argued nonetheless that the 2001 and 2002 registration forms he was required to sign indicated a ten-year registration and only in 2003 was he told for the first time that his registration would be for life.

Petitioner also acknowledged that at the plea hearing he "was generally informed by the Court (but not by his attorney) that he would have to register as a child sex offender." Further, "he was NOT informed of any precise or even estimated period of years of

---

[6] In Petitioner's reply to the State's answer, he would offer the conflicting assertion that he "left the courthouse [after his plea] understandably believing that he was to serve three years of probation and to register as a sex offender for just those three years." (Emphasis in original).

10

registration that came with the plea (it was lifetime registration at the time)." (Emphasis in original). He described how he suffered as the result of the mandated registration:

> [Petitioner] has suffered more than a decade of grueling, heartbreaking consequences of registration, having had to move several times over the years just to avoid harassment and perceived danger to him and his family, including his own children because his personal information and whereabouts are now published on the web for anyone to see and act upon.

He further lamented being "prohibited by TSA from going on a wedding anniversary cruise with his wife, because of this conviction."

At the hearing on his petition on December 1, 2016, Petitioner sought the relief of a ten-year registration, in accordance with the initial term he was told, or, in the alternative, that he be allowed to withdraw his plea. Petitioner stated on direct examination that he had assumed at the time of his plea that his registration period would persist only during the three years of probation, and that the judge's mention of it during the plea colloquy was the first he had heard of that consequence. Petitioner testified that a notice of registration he received on April 23, 2001, three months after his plea was accepted by the court, was the first he had learned of a ten-year registration period. He also testified to harassment due to his sex offender registration—flattened tires, dogs being allowed to defecate on his stoop, and receipt of threats—and to losing job opportunities due to his registration.

The coram nobis court denied the petition in a written Statement of Reasons and Order. The court rejected the ineffective assistance of counsel claim, sidestepping the deficient performance *Strickland* prong to find that Petitioner had not shown that he was

11

prejudiced by counsel's failure to inform him of the length of his registration period.[7]  The coram nobis court found that a reasonable defendant in Petitioner's position, having violated a strict liability statute—even knowing the length of registration—would not have insisted on going to trial.  The court also found that Petitioner's challenge was to the *length* of registration, not knowledge of the *need* to register.  The court noted the absence of any evidence, other than Petitioner's own testimony, that he was coerced into pleading guilty.

Review in the Court of Special Appeals

Petitioner noted an appeal to the Court of Special Appeals challenging the coram nobis court's reasoning and ultimate ruling that he had not made his case for coram nobis relief.  The State responded to the merits of Petitioner's argument, but first argued that Petitioner had waived his right to seek coram nobis relief because he forwent the opportunity to raise, in the 2006 petition, the claims he raises in this, the 2016 petition.

The Court of Special Appeals rejected the State's waiver argument.  That court quoted *Skok v. State*, 361 Md. 52, 79 (2000), for the proposition that "[b]asic principles of waiver" apply in coram nobis proceedings, consistent with the Maryland Uniform Postconviction Procedure Act ("UPPA").  The intermediate appellate court accepted that Petitioner had not raised the current claim in his 2006 coram nobis petition but reasoned that the 2006 petition had been prepared by a "jailhouse lawyer" and filed without fully reflecting Petitioner's understanding or thinking.  The intermediate appellate court also

---

[7]  We have previously said that courts need not consider the performance prong "[i]f it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice." *Yoswick v. State*, 347 Md. 228, 245 (1997) (quoting *Strickland v. Washington*, 466 U.S. 668, 697 (1984)).

"acknowledge[d] that [Petitioner] received contradictory and incorrect information about his registration period" at various times. Therefore, the court concluded that it "cannot find that [Petitioner] intelligently and knowingly failed to raise the issues relating to the required sex offender registration time period."

Turning then to the merits of Petitioner's claims, the Court of Special Appeals first affirmed the coram nobis court's denial of the ineffective assistance of counsel claim. The intermediate appellate court set out the two-prong test of *Strickland v. Washington*, 466 U.S. 668 (1984), for determining ineffective assistance of counsel: the petitioner must establish both that "counsel's representation fell below an objective standard of reasonableness," 466 U.S. at 688, and that such deficient performance was "prejudicial to the defense," *id.* at 692. Further, in the plea bargaining context, prejudice requires showing "a reasonable probability that, but for counsel's errors, [the petitioner] would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985).

As the coram nobis court had done, the Court of Special Appeals proceeded directly to the prejudice prong of *Strickland* and concluded that Petitioner had failed to establish prejudice. The court rejected, as an insufficient demonstration of prejudice, Petitioner's "*post hoc* testimony" that, with proper advice of his registration period, he would have gone to trial or that a reasonable defendant in Petitioner's shoes would have chosen to do so. Rather, "contemporaneous evidence," not "*post hoc* assertions," should be used to "substantiate a defendant's expressed preferences." *Lee v. United States*, 137 S. Ct. 1958, 1967 (2017). Like the coram nobis court, the Court of Special Appeals concluded that

13

Petitioner's asserted reasonable belief that the victim of the sexual offense was older is not a legal defense to third degree sexual offense, so a reasonable person in his position probably would have taken a fully suspended sentence rather than face a total of twenty-one years for the charged strict liability offenses if convicted following a trial. Therefore, Petitioner failed to demonstrate prejudice.

Finally, the Court of Special Appeals was "unpersuaded by [Petitioner's] contentions" that, in the totality of the circumstances, he did not plead knowingly and voluntarily. The intermediate appellate court did not review whether Petitioner understood the nature of the charge or the factual basis for his plea, noting that he had not made that argument to the coram nobis court. As for the lack of advice, the court "observe[d] that [Petitioner] was advised multiple times, on the record," that his guilty plea required registration as a sex offender, and, in any case, a lack of advice regarding indirect or collateral consequences of pleading guilty does not necessarily vitiate a defendant's due process rights. The court "decline[d] [Petitioner's] invitation to revisit" whether sex offender registration is a direct consequence of the plea.

We granted Petitioner's petition for certiorari, and the State's conditional cross-petition, *Hyman v. State*, 459 Md. 399 (2018), to address six questions,[8] which we have

---

[8] Petitioner asked this Court to answer three questions:
1. Is the Court of Special Appeals' holding that sexual offender registration is not a direct consequence of a third-degree sex offense conviction erroneous?
2. Did the Court of Special Appeals incorrectly assume that [Petitioner] understood the consequences of sexual offender registration despite never

(continued . . .)

14

consolidated and rephrased:

1. Does Petitioner's unawareness of the duration of his requirement to register as a child sex offender at the time of his plea render his plea involuntary or his counsel's assistance ineffective?

2. Does Petitioner's silence on the duration of his requirement to register as a child sex offender in his 2006 *pro se* coram nobis petition render constitutional claims based on that unawareness waived in this proceeding?

## II.

## Coram Nobis Relief in Maryland

The "essential nature of the writ of coram nobis is that it is an 'extraordinary remedy' justified 'only under circumstances *compelling such action to achieve justice.*'" *State v. Smith*, 443 Md. 572, 597 (2015) (quoting *Skok*, 361 Md. at 72). The writ is "available to raise fundamental errors in attempting to show that a criminal conviction was invalid under circumstances where no other remedy is presently available and where there were sound reasons for the failure to seek relief earlier." *Id.* (quoting *Skok*, 361 Md. at 72-73). Often, coram nobis relief is sought "years after the fact":

Very often in a criminal case, because of a relatively light sanction imposed

---

( . . . continued)
being advised?
3. Did the Court of Special Appeal[s] err by giving [Petitioner] an illegal sentence derived from an ambiguous plea agreement?
The State asked two questions in its answer and added a third in a conditional cross-petition:
4. Did the circuit court properly deny [Petitioner's] 2016 coram nobis petition?
5. Is [Petitioner's] sentence illegal?
6. Where [Petitioner] filed a 2006 pro se coram nobis petition that did not include the claims raised in his 2013 petition, did the Court of Special Appeals err when it found that [Petitioner] had not waived the 2013 claims?

15

> or for some other reason, a defendant is willing to forego [sic] an appeal even if errors of a constitutional or fundamental nature may have occurred. Then, when the defendant later learns of a substantial collateral consequence of the conviction, it may be too late to appeal, and, if the defendant is not incarcerated or on parole or probation, he or she will not be able to challenge the conviction by a petition for a writ of habeas corpus or a petition under the Post Conviction Procedure Act.

*Id.* at 598 (quoting *Skok*, 361 Md. at 77). Given the existence of serious collateral consequences, "there should be a remedy for a convicted person who is not incarcerated and not on parole or probation, who is suddenly faced with a significant collateral consequence of his or her conviction, and who can legitimately challenge the conviction on constitutional or fundamental grounds." *Id.* (quoting *Skok*, 361 Md. at 78).

The petitioner must satisfy five conditions to be granted relief: "the grounds for challenging the criminal conviction must be of a constitutional, jurisdictional, or fundamental character"; the petitioner has the burden to overcome the "presumption of regularity" in the criminal case; "the coram nobis petitioner must be suffering or facing significant collateral consequences from the conviction"; the issue must not be waived; and there may be no other "statutory or common law remedy [] then available." *Id.* at 599 (quoting *Skok*, 361 Md. at 78-80).

"Basic principles of waiver" apply to coram nobis proceedings and "the same body of law concerning waiver and final litigation of an issue" applies to coram nobis proceedings as applies to the UPPA. *Id.* (quoting *Skok*, 361 Md. at 79). Absent "intervening changes" in the law, then, an issue "finally litigated in a prior proceeding . . . may not be relitigated in a coram nobis action." *Id.* (quoting *Skok*, 361 Md. at 79).

The UPPA provides that except where "special circumstances" exist and their

16

existence is proved by a petitioner, "an allegation of error is waived when a petitioner could have made but intelligently and knowingly failed to make the allegation . . . on direct appeal . . . ; in a habeas corpus or coram nobis proceeding began by the petitioner; . . . or [] in any other proceeding that the petitioner began." CP § 7-106(b). In other words, an allegation is waived if it "had not been raised at trial or in a *previously-filed* appeal, application for leave to appeal, or post-conviction petition." *Smith*, 443 Md. at 601 (emphasis in original). But a coram nobis petitioner need not have sought relief on direct appeal, CP § 8-401, or in post-conviction proceedings, *Smith*, 443 Md. at 601-02, to preserve his or her rights. Although there is a "rebuttable presumption that the petitioner intelligently and knowingly failed to make the allegation" at a prior proceeding, CP § 7-106(b)(2), such a failure is not knowing if it was the "failure of *counsel* or an *unknowing petitioner* to raise an issue," *Smith*, 443 Md. at 603 (quoting *Curtis v. State*, 284 Md. 132, 139 (1978)) (emphasis added). The "special circumstances" excuse "'only becomes pertinent'" where the presumption is not rebutted. *Id.* (quoting *Curtis*, 284 Md. at 139).

We further have held that the intelligent and knowing standard applies only to waiver of "fundamental constitutional rights," for which "'courts indulge every reasonable presumption against waiver.'" *Id.* at 605 (quoting *Johnson v. Zerbst*, 304 U.S. 458, 464 (1938)). Where a fundamental constitutional right is *not* implicated, waiver is "governed by case law or any pertinent statutes or rules," and inaction "will normally bind a criminal defendant," *id.* (quoting *Curtis*, 284 Md. at 149-50):

> In the broadest sense of the word, any tactical decision by counsel, inaction by counsel, or procedural default, could be described as a "waiver." For example, an attorney must make numerous decisions in the course of a

17

> trial.  Whenever he makes one, choosing to take or forego [sic] a particular action, the alternate choice could be said to have been waived.

*Curtis*, 284 Md. at 147-48.

We again recognize that allegations of ineffective assistance of counsel and a plea that was not intelligent and knowing implicate fundamental constitutional rights and are subject to the *Johnson v. Zerbst* waiver standard.  *See Smith*, 443 Md. at 606; *North Carolina v. Alford*, 400 U.S. 25, 39 (1970) (calling "prohibitions against involuntary or unintelligent pleas" "constitutional guarantees"); *Padilla v. Kentucky*, 559 U.S. 356, 373-74 (2010) (recognizing that negotiation of a plea bargain and the duty to inform a client whether a plea carries a risk of deportation are part of the Sixth Amendment right to effective assistance of counsel).  However, if a petitioner advances even a fundamental constitutional claim "but fail[s] to assert all grounds upon which that claim is made, [the petitioner has] waived any allegation upon which the ineffective assistance of counsel claim could have been made but was not."  *State v. Syed*, No. 24, slip op. at 43 (Md. Mar. 8, 2019).

"Because of the 'extraordinary' nature" of a coram nobis remedy, we review a court's decision to grant or deny such a petition for abuse of discretion.  *State v. Rich*, 454 Md. 448, 470-71 (2017).  In determining abuse of discretion, however, an appellate court "should not disturb the *coram nobis* court's factual findings unless they are clearly erroneous, while legal determinations shall be reviewed *de novo*."  *Id.* at 471.  The interpretation of waiver as defined in CP § 7-106 involves construing and applying a statute and thus is reviewed *de novo*.  *See Schisler v. State*, 394 Md. 519, 535 (2006).

18

## III.

## Discussion

We have no quarrel with the Court of Special Appeals' analysis regarding the merits of Petitioner's claims. That court's rejection of Petitioner's claims, given the plea court's multiple advisements of sex offender registration, is well-reasoned. We do not agree, however, with that court's analysis of waiver, which led it to address the merits in the first place.

### *Waiver*

Petitioner alleges in the coram nobis petition before us that his fundamental rights were violated by ineffective assistance of counsel and the involuntariness of his plea. The Court of Special Appeals deemed the presumption of intelligent and knowing waiver rebutted by Petitioner's assertions that his 2006 petition was prepared by a "jailhouse lawyer" without his full understanding of its contents and that the petition did not necessarily reflect his thinking.

We disagree. Although our practice is "to construe liberally filings by *pro se* inmates, particularly when the statute involved is remedial," *Douglas v. State*, 423 Md. 156, 182 (2011), "we have long held that a defendant in a criminal case who chooses to represent himself is subject to the same rules regarding reviewability and waiver of questions not raised at trial as one who is represented by counsel," *Grandison v. State*, 341 Md. 175, 195 (1995) (citing *Midgett v. State*, 223 Md. 282, 298 (1960)). Petitioner may not have forgone counsel for his 2006 filings by a deliberate choice, *id.*, but construing his petition liberally does not require reading content into it. Petitioner's issue with the

19

duration of his registration period is not even hinted at in the 2006 coram nobis petition.

Like the Court of Special Appeals, we recognize that Petitioner "received contradictory and incorrect information about his registration period through various registration notices." However, we agree with the State that whatever "contradictory and incorrect information" was conveyed, nothing Petitioner received between his sentencing and his federal incarceration could have led a reasonable person to believe his registration period would only be three years. Even if he had been led to believe ten years was the correct duration, he certainly had notice by 2006, roughly three years *after* he signed in 2003 the registration order reflecting "lifetime" registration, that that might not be the case.

Even were we to allow for Petitioner's use of a "jailhouse lawyer" to negate the intelligent and knowing requirement of his waiver, only the broader understanding of waiver was required here. *Curtis*, although a case decided before prisoners were limited to only one post-conviction petition, sheds light on this case. In *Curtis*, the issue that was not raised previously was "the matter of his trial counsel's alleged inadequacy." 284 Md. at 151. Only in Curtis's second post-conviction petition did "he allege[] for the first time that he had been deprived of his Sixth Amendment right to 'the genuine and effective representation of counsel' at the trial, on direct appeal, and at the first post conviction proceeding." *Id.* at 134. We said, in pertinent part:

> With respect to the trial, the allegation was based on the trial attorney's failure to request a jury instruction on alibi, failure to request an instruction that voluntary intoxication could reduce first degree murder to second degree murder, failure of trial counsel to object to hearsay testimony of certain witnesses, and failure of counsel to request an instruction on the defense of "diminished capacity." The allegation that Curtis's second attorney was inadequate was grounded upon that attorney's failure at the first post

20

conviction proceeding to raise the issue of previous counsel's ineffectiveness.

*Id.* at 134-35. As "a criminal defendant cannot be precluded from having this issue considered because of his mere failure to raise the issue previously," Curtis's allegations had to have been waived intelligently and knowingly under the *Johnson v. Zerbst* standard. *Id.* at 150. We held that the "proffered facts . . . clearly disclose that Curtis did not 'intelligently and knowingly' fail to previously raise the matter of his trial counsel's alleged inadequacy. Therefore, the issue cannot be deemed to have been waived." *Id.* at 151.

In his 2006 petition, Petitioner did not fail to raise either ineffective assistance of counsel or involuntary plea; rather, he raised both claims. What Petitioner failed to raise in his prior petition was the *particular consequence*—the duration of his sex offender registration period—that he raises now as the *ground* underlying his two claims, and the question is whether he could have in 2006.

Undoubtedly, the answer is "yes." Petitioner knew by 2006, or reasonably should have known, that his registration period was longer than either three years or ten years. Indeed, the sex offender registration form he signed in 2003 reflected lifetime registration. His 2006 petition referred directly to the collateral consequence of being barred from RDAP participation. He also referred to the burdens of sex offender registration:

> [Attorney Shawn Gaither] never alerted me to the future consequences of my guilty plea in this matter. And the fact that I would be disgracing myself by having to register as a child sex offender, and would have extreme difficulties in alluding to my daily parental duties with my children in concerns with school, and community, and social outings, etc.

Yet, Petitioner did not state that he was aggrieved because of the failure of the court, the

21

State, or his counsel to notify him of the *duration* of registration.  The omission of this ground on which his previously-raised claims could have rested renders the ground waived. *Syed*, slip op. at 42 ("Mr. Syed's claim of ineffective assistance of counsel on the basis that his counsel failed to challenge the cell tower location evidence was waived because he did not raise that as a ground when advancing his ineffective assistance of counsel claim in his petition.").

Petitioner argues that sex offender registration is a direct consequence of a plea, citing *Doe v. Department of Public Safety & Correctional Services*, 430 Md. 535 (2013), and thus he was required to be advised of it for his plea to be intelligent and knowing.  The Supreme Court has taught that the "unique nature" of the consequence—but not the "distinction between direct and collateral consequences"—is the question that must be considered to decide whether an attorney rendered "reasonable professional assistance." *Padilla*, 559 U.S. at 365.  Yet, Maryland Rule 4-242 imposes a categorical distinction.  In 2001, Rule 4-242(c) allowed a court to accept a guilty plea "only after it determines . . . that . . . the defendant is pleading voluntarily, with understanding of the nature of the charge and the consequences of the plea . . . ."  Rule 4-242(e) (2001), in turn, specified that "omission of advice concerning the collateral consequences of a plea does not itself mandate that the plea be declared invalid."  Thus, Rule 4-242 gave defendants a due process right to be advised of direct, but not indirect or collateral, consequences of a guilty plea.[9]

---

[9]  Since 2001, when Petitioner was convicted and sentenced, a new Rule 4-242(f), entitled "Collateral consequences of certain pleas," was added to specify that before accepting a

(continued . . . )

22

Even if Rule 4-242 demands categorizing consequences of a conviction as either direct or collateral to determine whether an intelligent and knowing analysis is necessary, we still need not categorize sex offender registration as one or the other to resolve this case. If it is only collateral, then ordinary waiver principles apply, and Petitioner's 2006 silence about the duration of his registration period renders the issue waived. If registration is a direct consequence, his claim still was waived: he advanced a claim of an involuntary plea in 2006 but he did not raise as a ground the duration of his registration period, which, by then he knew was not for ten years, but rather, for life.[10] Having been advised by the trial

---

( . . . continued)
guilty plea, either "the court, the State's Attorney, the attorney for the defendant, or any combination thereof shall advise the defendant" that sex offender registration would result from entering a plea to certain offenses, including Petitioner's. Thus, the advice requirement notwithstanding, Rule 4-242(f) confirms that registration is a *collateral* consequence, the omission of advice of which "does not itself mandate that the plea be declared invalid."

[10] The Court of Special Appeals has held in several cases that a reasonable interpretation of the *Doe* "holding" is that registration is a direct consequence if imposed—or the duration of registration increased—retroactively, after the 2009 and 2010 amendments, *and* upon a defendant sentenced *before* those amendments. *See, e.g.*, *Quispe del Pino v. Md. Dep't of Pub. Safety & Corr. Servs.*, 222 Md. App. 44, 45-47 (2015) (holding, based on *Doe*, 430 Md. 535, that retroactively increasing a pre-2010 registration period of ten years at the time of a plea to twenty-five years was an *ex post facto* violation); *Connor v. State*, 223 Md. App. 1, 11, 13, 16 (2015) (holding that, although Connor had "fair warning" of the registration requirement and he was still on the registry at the time of the 2010 amendments, the retroactive increase of a ten-year registration requirement to twenty-five years was an *ex post facto* violation).

That scenario does not apply to Petitioner. Unlike these other appellants, Petitioner's registration was imposed before the amendments and his period was *shortened*, from lifetime to twenty-five years, as a result of the 2010 MSORA amendments, so his *ex post facto* argument depends on this Court's declaring his original registration period to have been three or ten years, which it was not.

court of the consequence of sex offender registration and having told the court that he had discussed the consequences of his plea with counsel, Petitioner unquestionably knew of the registration requirement. And, because the General Assembly is free to amend MSORA at any time, it defies the powers of any court or practitioner to give a defendant the precise, permanent duration of his registration with certainty. It was thus sufficient to satisfy Rule 4-242(c) and (e) in 2001, that a defendant be advised by the court, State, and/or counsel that he or she will be subject to registration, of any length;[11] the record is clear that Petitioner was so advised by the court.

## IV.

## Conclusion

For the foregoing reasons, we conclude that Petitioner's claims of ineffective assistance of counsel and involuntary plea, based on his not knowing the duration of his sex offender registration period, are waived. We therefore affirm the denial of Petitioner's request for coram nobis relief.

**JUDGMENT OF THE COURT OF SPECIAL APPEALS AFFIRMED. COSTS TO BE PAID BY PETITIONER.**

---

[11] Such advice would also satisfy Rule 4-242(f) now.