*Wendell Griffin v. State of Maryland*, No. 484, September Term 2018. Opinion by Beachley, J.

**CORAM NOBIS—SIGNIFICANT COLLATERAL CONSEQUENCES**

**CORAM NOBIS—WAIVER**

Appellant was convicted of first-degree murder and a related weapons charge in 1982. In 2012, appellant filed a petition for post-conviction relief as well as a petition for writ of actual innocence, alleging that the State committed numerous *Brady v. Maryland*, 373 U.S. 83 (1963) violations in securing his convictions. At the hearing on these petitions, appellant and the State reached an agreement whereby appellant would receive a time-served sentence in exchange for dismissing his post-conviction and actual innocence claims. Consequently, the court never ruled on appellant's two petitions.

In 2013, appellant filed a § 1983 action in the United States District Court for the District of Maryland against the Baltimore Police Department and three of its detectives. The District Court dismissed appellant's claim, and the Fourth Circuit affirmed, holding that under *Heck v. Humphrey*, 512 U.S. 477 (1994), appellant could not pursue his § 1983 claim until he invalidated his State conviction.

Appellant then attempted to vacate his convictions by filing a petition for *coram nobis* relief based on the alleged *Brady* violations. The circuit court denied appellant's petition, and appellant appealed.

*Held*: Judgment affirmed. In order to successfully petition a court for *coram nobis* relief, a petitioner must demonstrate that he or she is suffering significant collateral consequences. Additionally, a petitioner must show that he or she did not previously waive the grounds that the petition relies upon.

Here, appellant's inability to pursue a federal civil claim for unliquidated damages does not constitute a significant collateral consequence under *coram nobis* law. Additionally, appellant waived the grounds underlying his *coram nobis* petition because they were withdrawn in 2012 when he agreed to a modification of sentence in exchange for his dismissal of those claims.

Circuit Court for Baltimore City
Case Nos. 18120316; 18120317

IN THE COURT OF SPECIAL APPEALS

OF MARYLAND

No. 484

September Term, 2018

WENDELL GRIFFIN

v.

STATE OF MARYLAND

Wright,
Beachley,
Wilner, Alan M.
   (Senior Judge, Specially Assigned),

JJ.

Opinion by Beachley, J.

Filed: August 29, 2019

Pursuant to Maryland Uniform Electronic Legal
Materials Act
(§§ 10-1601 et seq. of the State Government Article) this document is authentic.



Suzanne C. Johnson, Clerk

On October 25, 2016, appellant Wendell Griffin filed a Petition for Writ of Error Coram Nobis and Request for Hearing in the Circuit Court for Baltimore City, seeking to vacate his 1982 convictions for first-degree murder and openly carrying a deadly weapon. The circuit court held a hearing on appellant's petition on November 15, 2017. In an opinion and order dated April 3, 2018, the circuit court denied appellant's petition. Appellant timely appealed, and presents two issues for our review,[1] which we have rephrased as follows:

1. Does the inability to file a civil claim in federal court constitute a significant collateral consequence for purposes of *coram nobis* relief?

2. Did appellant waive his right to seek *coram nobis* relief?

We hold that appellant's inability to file a civil rights claim does not satisfy the "significant collateral consequences" element required for *coram nobis* relief. In the alternative, we hold that appellant waived the grounds underlying his *coram nobis* petition. Accordingly, we affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

On March 8, 1982, a jury convicted appellant of the first-degree murder of James Wise, III, and of openly carrying a deadly weapon with intent to injure. Appellant received a life sentence for first-degree murder, and a consecutive sentence of three years for the

---

[1] In his brief, appellant raised a third argument—that the *coram nobis* court erred in refusing to estop the State from asserting waiver and/or res judicata. At oral argument, appellant appeared to concede that this estoppel argument lacked merit. In his opening brief, appellant treated the State and the police officers of the Baltimore Police Department as synonymous for purposes of his estoppel argument. In his reply brief, however, appellant candidly conceded: "The State, . . . has not been and will not be a party to [appellant's] § 1983 proceedings[. . . .]" Accordingly, we decline to address this issue.

weapon conviction. A panel of this Court affirmed appellant's convictions in an unreported

opinion, and the Court of Appeals denied appellant's petition for certiorari. Several years

later, in the 1990s, appellant unsuccessfully sought both Maryland state post-conviction

relief in the Circuit Court for Baltimore City and federal habeas corpus relief in the United

States District Court for the District of Maryland.[2]

On June 10, 2010, appellant filed a *pro se* petition seeking post-conviction DNA

testing pursuant to Md. Code (2001, 2008 Repl. Vol.), § 8-201 of the Criminal Procedure

Article ("CP").[3] Pursuant to that filing, appellant, through counsel, requested documents

from the Baltimore Police Department ("BPD") regarding its investigation of appellant for

the murder of Mr. Wise. As a result of that document request, in 2011 appellant learned

that the BPD had withheld exculpatory evidence consisting of photo arrays, witness

statements, and chain of custody documents. On February 2, 2012, appellant filed a motion

for leave to reopen his post-conviction case, seeking post-conviction relief based on the

newly discovered evidence. Four days later, he filed a petition for writ of actual innocence

pursuant to CP § 8-301.[4] Both petitions alleged that the State had committed numerous

---

[2] The record does not reveal the bases for appellant's post-conviction and habeas allegations.

[3] The General Assembly has since amended this statute. *See* Md. Code (2001, 2018 Repl. Vol.), § 8-201 of the Criminal Procedure Article ("CP"). Those amendments are not relevant to this appeal.

[4] The General Assembly has also since amended this statute, but the amendments are not relevant to this appeal.

2

*Brady*[5] violations.

The parties appeared in the circuit court before Judge Gale E. Rasin on May 23, 2012, for a hearing on the two petitions. Prior to the court ruling on the merits of the *Brady* violations, however, the parties reached an agreement whereby appellant would withdraw his claims in consideration for a time-served sentence. The State told the court,

> [T]he State is not convinced that there were, in fact, any *Brady* violations. And if the State were convinced the State ethically would be bound to concede to the granting of a new trial. The State does recognize that the *Brady* allegations are plausible enough that . . . after discussing the matters with both [appellant] through his attorney, the State and [appellant] have agreed to a -- the State will concede to a resentencing on this matter.

The State went on to explain that the matter had "been discussed" with "all levels of the State's Attorney's Office," and that this particular course of action would "*ensure that [appellant] for the rest of his life will remain convicted for the murder of James Wise.*" (Emphasis added). Appellant's counsel responded that appellant "*maintain[ed] his actual innocence of these convictions but [had] agreed to this resolution in the interest of moving forward and obtaining his freedom.*" (Emphasis added). As we shall explain below, these expressed considerations—the State's intent that appellant remain convicted of James Wise's murder for the rest of his life, and appellant's decision to accept a commuted sentence rather than challenge the underlying convictions for *Brady* violations—play an important role in resolving this appeal.

---

[5] *Brady v. Maryland*, 373 U.S. 83, 87 (1963) (holding that "suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution").

On November 13, 2013, nearly eighteen months after he was released from prison, appellant filed a civil action in the United States District Court for the District of Maryland pursuant to 42 U.S.C. §§ 1983 and 1988(b) against the BPD and three BPD detectives.[6] The district court dismissed appellant's complaint, ruling that it was barred pursuant to *Heck v. Humphrey*, 512 U.S. 477 (1994). In *Heck*, the Supreme Court held that,

> in order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254. A claim for damages bearing that relationship to a conviction or sentence that has *not* been so invalidated is not cognizable under § 1983.

*Id*. at 486-87 (footnote omitted). As relevant here, *Heck* required appellant to have his convictions "declared invalid by a [Maryland] state tribunal" before proceeding with his § 1983 action.

Appellant appealed the district court's decision to the Fourth Circuit. In *Griffin v. Balt. Police Dept*., 804 F.3d 692, 699 (4th Cir. 2015), the Fourth Circuit affirmed the dismissal of appellant's claim. The Fourth Circuit noted that Maryland provides "many avenues of post-conviction relief[,]" listing as examples petitions for writ of error *coram nobis* and for writ of actual innocence, procedures which are in addition to direct appeals and collateral review. *Id*. at 698. Nevertheless, the Fourth Circuit cautioned that

---

[6] 42 U.S.C. § 1983 permits a civil cause of action against those who, under color of law, cause a citizen to be deprived of his or her constitutional rights. 42 U.S.C. § 1988(b) allows such a plaintiff to also seek attorney's fees.

"[appellant] may or may not qualify for any or all of [those] remedies; that is for Maryland to decide." *Id*.

Apparently heeding the Fourth Circuit's suggestion, on October 25, 2016, appellant filed his petition for writ of error *coram nobis*, which is the subject of this current appeal. In the petition, appellant sought to vacate his convictions based on the same *Brady* violations he alleged in his 2012 petitions for post-conviction relief and for writ of actual innocence. As previously noted, the circuit court held a hearing on November 15, 2017. In its memorandum opinion, the circuit court denied appellant's petition, finding that he failed to establish that he was suffering significant collateral consequences, and that pursuant to the doctrine of res judicata, he waived his right to seek *coram nobis* relief. As stated above, appellant timely appealed. We shall provide additional facts as necessary.

**DISCUSSION**

The Court of Appeals has noted that "[t]he essential nature of the writ of coram nobis is that it is an 'extraordinary remedy' justified 'only under circumstances *compelling such action to achieve justice*.'" *Hyman v. State*, 463 Md. 656, 671 (2019) (internal quotation marks omitted) (quoting *State v. Smith*, 443 Md. 572, 597 (2015)). Explaining its purpose, the Court has stated that the writ of *coram nobis*

> is "available to raise fundamental errors in attempting to show that a criminal conviction was invalid under circumstances where no other remedy is presently available and where there were sound reasons for the failure to seek relief earlier." Often, coram nobis relief is sought "years after the fact":
>
>> Very often in a criminal case, because of a relatively light sanction imposed or for some other reason, a defendant is willing to forego [sic] an appeal even if errors of a

5

> constitutional or fundamental nature may have occurred. Then, when the defendant later learns of a substantial collateral consequence of the conviction, it may be too late to appeal, and, if the defendant is not incarcerated or on parole or probation, he or she will not be able to challenge the conviction by a petition for a writ of habeas corpus or a petition under the Post Conviction Procedure Act.

*Id*. (citation omitted) (quoting *Smith*, 443 Md. at 598).

Although the Court of Appeals has described the writ of error *coram nobis* as "an ancient common law device," *Smith*, 443 Md. at 623, no Maryland court had articulated the standard of appellate review until *State v. Rich*, 454 Md. 448 (2017). There, for the first time, the Court of Appeals held,

> Because of the "extraordinary" nature of this remedy, [the Court of Appeals] deem[s] it appropriate for appellate courts to review the *coram nobis* court's decision to grant or deny the petition for abuse of discretion. However, in determining whether the ultimate disposition of the *coram nobis* court constitutes an abuse of discretion, appellate courts should not disturb the *coram nobis* court's factual findings unless they are clearly erroneous, while legal determinations shall be reviewed *de novo*.

*Id*. at 470-71.

Turning to the substantive requirements of the writ, a petitioner must satisfy five conditions before a court may grant relief:

> [1] "the grounds for challenging the criminal conviction must be of a constitutional, jurisdictional, or fundamental character"; [2] the petitioner has the burden to overcome the "presumption of regularity" in the criminal case; [3] "the coram nobis petitioner must be suffering or facing significant collateral consequences from the conviction"; [4] the issue must not be waived; and [5] there may be no other "statutory or common law remedy [ ] then available."

*Hyman*, 463 Md. at 672 (quoting *Smith*, 443 Md. at 599).

6

In this case, we shall hold that appellant failed to satisfy the third and fourth

conditions for *coram nobis* relief: he is not suffering significant collateral consequences,

and he has waived the grounds underlying the basis for the petition. We first explain that

appellant's inability to file his § 1983 claim does not constitute a significant collateral

consequence. We shall then discuss how appellant waived the underlying grounds for his

*coram nobis* petition when he abandoned his *Brady* violation claims in 2012 in exchange

for a time-served sentence that afforded him an immediate release from prison.

I.   The Inability to Initiate a Civil Suit is Not a Significant Collateral
     Consequence

Appellant first argues that his inability to pursue his claim in federal court

constitutes a significant collateral consequence in the context of *coram nobis* relief. Instead

of citing to caselaw to support his position that the inability to file a civil suit constitutes a

significant collateral consequence, appellant merely asserts that, "given the extraordinary

procedural history of this case, this Court should find that [appellant] satisfies the

significant collateral consequence test."

We forgive appellant's failure to cite applicable Maryland caselaw. At oral

argument, counsel for both appellant and the State agreed that they were aware of no case

in the country—state or federal—holding that the inability to pursue a civil claim

constitutes a "significant collateral consequence" in the *coram nobis* context. In Maryland,

appellate courts have only explicitly acknowledged that subsequent enhanced sentences[7]

---

[7] *See, e.g.*, *Jones v. State*, 445 Md. 324, 330 (2015); *Coleman v. State*, 219 Md. App. 339, 347 (2014), *cert. denied*, 441 Md. 667 (2015); *Graves v. State*, 215 Md. App. 339,

7

and deportation proceedings[8] may constitute "significant collateral consequences." Due to the dearth of authority in Maryland, we turn to the federal circuits for guidance.

In *Fleming v. United States*, 146 F.3d 88 (2d Cir. 1998), the United States Court of Appeals for the Second Circuit was tasked with determining whether Fleming suffered "a continuing legal consequence of his conviction because he [was] 'disabled from employment in a variety of financial jobs.'" *Id*. at 90.[9] Specifically, Fleming alleged that his criminal conviction prohibited him from obtaining a license as a securities broker. *Id*. In rejecting Fleming's argument, the Second Circuit provided two examples of "continuing legal consequences": "where a prior conviction deprives a petitioner of his right to vote under state law, or serves as an 'aggravating factor' in sentencing for a subsequent offense[.]" *Id*. (citations omitted). Contrasting these examples of continuing legal consequences, the court stated that "the mere 'desire to be rid of the stigma' of a conviction

---

345 (2013), *cert. dismissed*, 441 Md. 61 (2014); *State v. Castellon-Gutierrez*, 198 Md. App. 633, 637 (2011); *Gross v. State*, 186 Md. App. 320, 323, *cert. denied*, 410 Md. 560 (2009); *Abrams v. State*, 176 Md. App. 600, 606 (2007); *Parker v. State*, 160 Md. App. 672, 687-88 (2005); *Pitt v. State*, 144 Md. App. 49, 52, *cert. denied*, 369 Md. 660 (2002); *State v. Hicks*, 139 Md. App. 1, 5 (2001).

[8] *See, e.g.*, *Smith*, 443 Md. at 584-85; *Miller v. State*, 435 Md. 174, 179-80 (2013); *Rivera v. State*, 409 Md. 176, 193 (2009); *Guardado v. State*, 218 Md. App. 640, 642-43 (2014).

[9] We note that the "continuing legal consequence," element roughly corresponds to Maryland's requirement of "significant collateral consequences." *See Fleming*, 146 F.3d at 90 ("The requirement that the petitioner demonstrate continuing legal consequences from his conviction derives from the Supreme Court's observation in [*United States v. Morgan*, 346 U.S. 502, 512-513 (1954)] that '[a]lthough the term has been served, the results of the conviction may persist. Subsequent convictions may carry heavier penalties, civil rights may be affected.'").

8

is not enough." *Id*. (citing *United States v. Nat'l Plastikwear Fashions*, 368 F.2d 845, 846 (2d Cir. 1966)). Turning to Fleming's case, the court noted that Fleming failed to present any evidence showing that he had sought and been denied licensure as a securities broker, that he had ever been previously employed in such a capacity, or that he could obtain such employment, but for his conviction. *Id*. at 91. Noting that Fleming's "claim [was] purely speculative," the court affirmed the denial of his petition. *Id*. Although the *Fleming* court did not provide an elaborate explanation, we discern that, while abrogation of voter rights or a subsequent enhanced sentence will constitute a significant collateral consequence, speculative employment opportunities do not.

Several cases from the Seventh Circuit provide further guidance on the issue of significant collateral consequences. In *United States v. Keane*, 852 F.2d 199, 200 (7th Cir. 1988), *cert. denied*, 490 U.S. 1084 (1989), Keane sought *coram nobis* relief to vacate his conviction and receive reimbursement for a $27,000 criminal fine he paid following his conviction. *Id*. To support his *coram nobis* petition, Keane relied on the fact that thirteen years after his conviction, the United States Supreme Court in *McNally v. United States*, 483 U.S. 350 (1987)[10] held that the mail fraud statute—the statute used to convict Keane— no longer criminally prohibited Keane's conduct. *Id*.

In affirming the denial of his petition, the Seventh Circuit first explained that a *coram nobis* petitioner "must demonstrate that the judgment of conviction produces

---

[10] Our survey of the relevant cases revealed that the *McNally* decision spawned a flurry of federal *coram nobis* litigation.

9

lingering civil disabilities (collateral consequences). He also must demonstrate that the error is the type of defect that would have justified relief during the term of imprisonment." *Id*. at 203.

The court noted that significant collateral consequences "include loss of the rights to vote, hold occupational licenses (including law licenses), and bear arms; criminal convictions also may lead to enhanced penalties for future offenses. These future effects may call for a fresh look at the conviction." *Id*. The court contrasted these consequences with those that do not justify *coram nobis* relief:

> Criminal convictions sometimes produce financial penalties and diminish the reputation of the defendant, but these do not entail continuing legal effects of a judgment. Civil judgments frequently have the same effects, which do not authorize indefinite relitigation. Many courts therefore have held that coram nobis may be employed if and only if the petitioner is suffering civil disabilities unique to criminal convictions.

*Id*.

Turning to Keane's case, the court noted that "Keane was amerced $27,000, which gives him a stake sufficient to produce a 'case or controversy,' *but the fine is no different from the award of damages in civil litigation. It is a sunk cost rather than a continuing disability producing additional injury as time passes*." *Id*. at 204 (emphasis added). The court went on to state,

> We do not doubt that the return of a fine is permissible relief if a writ in the nature of coram nobis is otherwise justified. *We hold only that the prospect of getting money back is not enough by itself to support belated review*. . . . Our conclusion that financial stakes do not adequately distinguish this from a routine civil matter makes it unnecessary to explore limits on the restitution of criminal fines[. . . .]

10

*Id.* (emphasis added). In short, the court held that the mere prospect of obtaining reimbursement of a criminal fine was insufficient to warrant *coram nobis* relief. *Id.*

Another Seventh Circuit case, *United States v. Bush*, 888 F.2d 1145 (7th Cir. 1989), is instructive. There, in another *McNally* case, Bush sought *coram nobis* relief because his conviction under the mail fraud statute "prevented him from holding high-visibility public relations jobs, which the government maintained [was] a reputational injury rather than a civil disability." *Id.* at 1148. The district court granted Bush's petition, reasoning that the inability to obtain a job comparable to the one held at the time of conviction constituted a "'civil disability' sufficient to support issuance of the writ." *Id.*

On appeal, the Seventh Circuit reversed the district court, holding that the "inability to obtain high-visibility PR work is not a 'civil disability[.]'" *Id.* at 1149. Rather, the court concluded that Bush's alleged civil disability was merely reputational in nature, stating,

> Bush [was] under no legal disability of which a court may relieve him. Any obstacle in the path of his preferred career [was] of private origin. Although the conviction injure[d] his reputation, which in turn reduce[d] his prospects for high-profile employment, the *facts* would remain no matter what a court did.

*Id.* Following its reasoning in *Keane* that a significant collateral consequence must be unique to a criminal conviction, the court additionally noted that "Unwillingness to hire someone for mouth-watering jobs is not a legal disability 'unique to criminal convictions.'" *Id.* at 1150 (quoting *Keane*, 852 F.2d at 203).[11] Accordingly, Bush's inability to obtain a

---

[11] The Seventh Circuit did note, however, that "Liberty of occupation receives greater protection than the choice of a job within a profession." *Bush*, 888 F.2d at 1150.

11

coveted job did not constitute a significant collateral consequence. *Id.* at 1150.

In *United States v. Craig*, 907 F.2d 653, 654, 657 (7th Cir. 1990), *cert. denied*, 500 U.S. 917 (1991), yet another *McNally* case, the Seventh Circuit again considered the scope of "lingering civil disabilities" for multiple petitioners. Acknowledging the developing *coram nobis* jurisprudence from *Keane* and *Bush*, the Seventh Circuit stated,

> Considering . . . systemic interests in finality, we have rejected coram nobis petitions except where there is a concrete threat that an erroneous conviction's lingering disabilities will cause serious harm to the petitioner. Thus, the types of disabilities sufficient to justify coram nobis relief can be broken down into three elements. *First, the disability must be causing a present harm; it is not enough to raise purely speculative harms or harms that occurred completely in the past.* Second, the disability must arise out of the erroneous conviction. Third, the potential harm to the petitioner must be more than incidental.

*Id.* at 658 (emphasis added) (footnote omitted). As an example, the court cited the Supreme Court's opinion in *United States v. Morgan*, 346 U.S. 502, 503-04 (1954), where the petitioner faced enhanced criminal sentencing as a result of a prior conviction. *Craig*, 907 F.2d at 658. The Seventh Circuit stated that "The three elements of a civil disability all apply to a coram nobis petitioner serving an enhanced sentence because of an allegedly erroneous conviction in another jurisdiction." *Id.* The court then used this lens to review the *coram nobis* petitions in *Craig*.

The court initially noted that the "most compelling argument" was that one petitioner sought the return of his license to practice law. *Id.* at 659. Acknowledging that

---

In other words, the right to work implicates greater collateral consequences than the mere desire to obtain a specific job.

*Keane* "suggested that 'this sort of civil disability could support the issuance of the writ,'" the court nevertheless rejected the argument because that petitioner had "not shown either that his conviction [was] a direct cause of his disbarment or that he [had] a present desire to apply for reinstatement to the bar." *Id*. (quoting *Keane*, 852 F.2d at 203).

Two other petitioners sought the writ because the vacation of their convictions "would entitle them to receive legislators' pension benefits taken from them upon conviction." *Id*. at 660. The Seventh Circuit rejected entitlement to pension benefits as a significant collateral consequence. First, the court noted that the petitioners' "removal from the pension plan occurred entirely in the past. As . . . noted above, a writ of error coram nobis is inappropriate where the civil disabilities do not threaten present harm." *Id*. Next, echoing *Keane*'s language regarding criminal fines, the court stated that "removal from the pension plan is a sunk cost, much like a criminal fine." *Id*. The court analogized the loss of pension rights to recovery of a fine, concluding that "Just as the possibility of recovering a fine [was] insufficient to justify issuance of the writ, so [was] the possibility of recovering lost pension benefits." *Id*. (citation omitted).

The final case we cite from the Seventh Circuit is *Howard v. United States*, 962 F.2d 651, 652 (7th Cir. 1992). In this *McNally* case, following his convictions for fraud in 1985, "Howard voluntarily relinquished his law license in Indiana . . . to avoid an adversarial disciplinary hearing." *Id*. When *McNally* decriminalized Howard's actions, he sought *coram nobis* relief, essentially alleging three civil disabilities: 1) loss of his law license; 2) inability to possess a firearm; and 3) potential international travel restrictions. *Id*. at 653.

13

In addressing Howard's claims, the court first noted that "the loss of the right to hold occupational licenses, including law licenses, is the type of civil disability which could support issuance of a writ of error coram nobis." *Id.* at 654. Nevertheless, the court observed that "Howard's current inability to practice law did not arise from his conviction. He voluntarily surrendered his license to practice law in Indiana sometime after his conviction." *Id.* Although Howard insisted that the loss of his license "was inevitable . . . because a felony conviction in Indiana 'virtually' guarantees disbarment[,]" the court noted that "disbarment is not automatic in such instances." *Id.* Indeed, "None of the disciplinary rules or cases cited by Howard support[ed] the contention that he would have been automatically disbarred specifically on the basis of the crimes for which he was convicted." *Id.* Because the Indiana Supreme Court could have merely suspended Howard's license rather than disbar him, the link between his civil disability (the inability to practice law) and his conviction was "more tenuous than in *Craig*." *Id.* Additionally, the Seventh Circuit held that, because there was no evidence in the record of the Indiana Supreme Court's decision on his application for reinstatement to the bar, Howard "failed to demonstrate that his inability to practice law . . . caused him a serious present harm." *Id.* The court concluded that, "Because Howard's inability to practice law did not arise from his conviction and [was] not causing him a 'present harm,' coram nobis relief [was] not justified." *Id.* at 655.

Turning to Howard's inability to possess a firearm and his alleged travel restrictions, the Seventh Circuit noted that "the loss of the right to bear arms could be the

type of civil disability conferring coram nobis jurisdiction[,]" but summarily rejected this argument because "Howard ha[d] presented no evidence that this disability [was] causing him present harm." *Id.* Regarding the travel restrictions, the court noted that Howard's concerns were speculative, and, in any event, "the loss of the right to travel to a foreign country does not appear to be a civil disability of the type justifying the issuance of a writ of error coram nobis." *Id.* Accordingly, the court rejected these contentions.

For full transparency, we note that the Ninth Circuit presumes that significant collateral consequences always result from a criminal conviction. Unlike the other federal circuits, the Ninth Circuit has "repeatedly reaffirmed the presumption that collateral consequences flow from any criminal conviction, and the government carries the burden of disproving this presumption." *United States v. Walgren*, 885 F.2d 1417, 1421 (9th Cir. 1989) (internal quotation marks omitted) (quoting *Hirabayashi v. United States*, 828 F.2d 591, 606 (9th Cir. 1987)). In *Hirabayashi*, the Ninth Circuit stated that "[its] own *coram nobis* decisions . . . consistently apply the . . . '*no* possibility of *any* collateral legal consequences' test." 828 F.2d at 606. However, given that a Maryland petitioner bears the burden of proof in a *coram nobis* proceeding, *see Skok v. State*, 361 Md. 52, 78 (2000), and because the Court of Appeals has characterized *coram nobis* as an "extraordinary remedy" justified "only under circumstances *compelling such action to achieve justice*," *Hyman*, 463 Md. at 671, we doubt that Maryland would adopt the Ninth Circuit's expansive

15

approach.[12]

We conclude that appellant's inability to pursue a civil claim does not constitute a significant collateral consequence sufficient to warrant *coram nobis* relief. In our view, appellant's § 1983 claim for damages is far less compelling than the request for reimbursement of a criminal fine or the reinstatement of lost pension rights, both of which have been rejected by federal courts. *See Keane*, 852 F.2d at 204; *see also Craig*, 907 F.2d at 660. We agree with the *Keane* court's observation that financial losses alone are insufficient to justify *coram nobis* relief. Moreover, appellant's federal civil claim for unliquidated damages is far too speculative to warrant the "extraordinary remedy" contemplated by *coram nobis* law. *Hyman*, 463 Md. at 471. Thus, we hold that appellant's inability to pursue a federal civil claim does not constitute a significant collateral consequence under Maryland *coram nobis* law.

---

[12] In *United States v. Mandel*, 862 F.2d 1067, 1071 (4th Cir. 1988), *cert. denied*, 491 U.S. 906 (1989), a *McNally* case, the Fourth Circuit employed a unique approach. There, former Maryland governor Marvin Mandel and other petitioners successfully petitioned for *coram nobis* relief in the United States District Court. *Id*. at 1068.

On appeal, the Fourth Circuit did not contemplate whether the petitioners sufficiently alleged significant collateral consequences. Instead, the court relied on the notion that *coram nobis* was appropriate "in order to achieve justice[,]" noting that the petitioners had "appealed their cases at each stage of the proceeding." *Id*. at 1074-75.

Although the *Mandel* case provides minimal guidance on the issue of collateral consequences, in *Bereano v. United States*, 706 F.3d 568, 576 (4th Cir. 2013), the Fourth Circuit acknowledged that disbarment from the practice of law constituted "substantial adverse consequences" for purposes of *coram nobis* relief, a view that would be consistent with the Seventh Circuit's jurisprudence.

II.     Appellant Waived the Grounds Underlying his *Coram Nobis* Petition

Assuming *arguendo* that appellant's inability to file suit qualified as a significant collateral consequence, we would still affirm the circuit court's denial of his petition for *coram nobis* because he waived his grounds for *coram nobis* relief as articulated by the Court of Appeals in *Hyman*. We explain.

In his 2012 petitions for post-conviction relief and for writ of actual innocence, appellant alleged numerous *Brady* violations in seeking to vacate his convictions. According to appellant's brief, at the May 23, 2012 hearing on those petitions, "Judge Rasin stated that the court was inclined to grant [appellant's] request for post-conviction relief and grant him a new trial unless the parties, [appellant] and the State, reached an agreement." The *coram nobis* court's April 2018 order echoed this notion: "Judge Rasin indicated the court's inclination to grant post conviction relief and order a new trial for [appellant]."[13] Despite the fact that Judge Rasin appeared ready to rule in his favor and grant him a new trial, appellant instead agreed to withdraw his two petitions in exchange for a time-served sentence that assured his release. Four years later, in his petition for writ of error *coram nobis*, appellant raised those same *Brady* violations. Because appellant abandoned his *Brady* violation claims in 2012, he waived them for purposes of his *coram nobis* petition.

---

[13] Despite both the *coram nobis* court's and appellant's assertions that Judge Rasin was inclined to grant appellant a new trial, we see no support for that contention in the May 23, 2012 transcript. In a footnote in its brief, the State offers that, "[a]lthough Judge Rasin may have made such a statement off the record in one of the meetings in chambers to which she alluded, she did not make such a statement on the record at the May 23, 2012 hearing."

The Court of Appeals recently addressed the issue of waiver in the context of *coram nobis*. *Hyman,* 463 Md. 656. There, in January 2001, Hyman pleaded guilty to a third-degree sex offense. *Id*. at 659. Pursuant to the plea agreement, the court sentenced Hyman to probation and required him to register as a child sex offender. *Id*. at 660-61. Notably, "no mention was made on the record of the plea and sentencing proceeding of the duration of that registration period." *Id*. at 661. In both April 2001 and May 2002, Hyman's sex offender registration form incorrectly indicated that he was only required to register annually for ten years. *Id*. In June 2003, however, for the first time, Hyman's registration form correctly informed him that he would need to register for life. *Id*. at 661-62.

In 2004, Hyman was convicted in federal court on unrelated drug charges and sentenced to seventy-eight months imprisonment. *Id*. at 662. While imprisoned, Hyman learned of a drug abuse program with an early release incentive. *Id*. Hyman's status as a sex offender, however, precluded his eligibility for the program. *Id*. Consequently, in 2006, Hyman, through a "jailhouse lawyer," filed a *coram nobis* petition. *Id*. In his 2006 petition, Hyman alleged that: "(1) he received ineffective assistance of counsel before and during the plea and sentencing proceeding, and (2) his plea of guilty to third degree sexual offense was involuntary." *Id*. Significantly, Hyman "did not directly complain about the duration of his sex offender registration period." *Id*. The circuit court denied Hyman's petition and his appeals became moot when the federal prison released him earlier than expected due to changes in the Federal Sentencing Guidelines. *Id*. at 662-63.

In 2016, following changes in Maryland law regarding his sex offender registration, Hyman filed a second petition for *coram nobis*.[14]  *Id*. at 664-65.  In his 2016 petition, Hyman claimed that, "as the result of counsel's failure to advise him of the length of his [sex offender] registration period[,]" his plea was involuntary and he had received ineffective assistance of counsel.  *Id*. at 665.

The Court of Appeals held that Hyman waived his *coram nobis* allegations stemming from the length of his sex offender registration.  In reaching this conclusion, the Court began its analysis by explaining that "'Basic principles of waiver' apply to coram nobis proceedings and 'the same body of law concerning waiver and final litigation of an issue' applies to coram nobis proceedings as applies to the [Uniform Post-Conviction Procedure Act]."  *Id*. at 672.  Borrowing from the waiver analysis in post-conviction law, the Court stated,

> The [Uniform Post-Conviction Procedure Act] provides that except where "special circumstances" exist and their existence is proved by a petitioner, "an allegation of error is waived when a petitioner could have made but intelligently and knowingly failed to make the allegation . . . on direct appeal . . . ; in a habeas corpus or coram nobis proceeding began by the petitioner; . . . or [ ] in any other proceeding that the petitioner began." CP § 7-106(b). *In other words, an allegation is waived if it "had not been raised at trial or in a previously-filed appeal, application for leave to appeal, or post-conviction petition." Smith*, 443 Md. at 601.

*Id*. (emphasis added).  The Court also noted that,

> Although there is a "rebuttable presumption that the petitioner intelligently and knowingly failed to make the allegation" at a prior proceeding, CP § 7-106(b)(2), such a failure is not knowing if it was the "failure of *counsel* or

---

[14] Ironically, a 2010 amendment to the law reduced Hyman's sex offender registration duration from "lifetime" to only twenty-five years.  *Hyman*, 463 Md. at 664.

an *unknowing petitioner* to raise an issue," *Smith*, 443 Md. at 603, (quoting *Curtis v. State*, 284 Md. 132, 139, (1978)) (emphasis added). The "special circumstances" excuse "only becomes pertinent" where the presumption is not rebutted. *Id.* (quoting *Curtis*, 284 Md. at 139).

*Id.* at 672-73. Put simply, the Court held that a petitioner waives an issue when he or she could have raised that same issue at a prior proceeding. *Id.* Although there is a rebuttable presumption that a petitioner has intelligently and knowingly waived the issue, the existence of "special circumstances" may still excuse an intelligent and knowing waiver. *Id.* at 672-73.[15]

The Court further qualified the standards for waiver, explaining that the "intelligent and knowing standard applies only to waiver of 'fundamental constitutional rights," whereas non-fundamental rights are "governed by case law or any pertinent statutes or rules[.]" *Id.* at 673 (quoting *Smith*, 443 Md. at 605).

Turning to Hyman's case, the Court recognized that Hyman's claims of ineffective assistance of counsel and an involuntary guilty plea implicated fundamental constitutional rights, requiring the Court to apply the "intelligent and knowing" standard. *Id.* at 673. Despite this higher standard, the Court nevertheless concluded that Hyman waived his claims. In reaching its conclusion, the Court observed that

> In his 2006 petition, [Hyman] did not fail to raise either ineffective assistance of counsel or involuntary plea; rather, he raised both claims. What [Hyman] failed to raise in his prior petition was the *particular consequence*—the duration of his sex offender registration period—that he

---

[15] The Court did not further elaborate on these "special circumstances" and none are alleged in appellant's case.

20

> raises now as the *ground* underlying his two claims, and the question is whether he could have in 2006.
>
> Undoubtedly, the answer is "yes." [Hyman] knew by 2006, or reasonably should have known, that his registration period was [for life]. Indeed, the sex offender registration form he signed in 2003 reflected lifetime registration.

*Id*. at 676. By the time Hyman filed his 2006 *coram nobis* petition, he knew that he was required to register as a sex offender for the rest of his life. Because this "ground" for *coram nobis* relief existed as early as 2003, Hyman's failure to raise it in 2006 when he alleged other ineffective assistance and involuntary plea arguments rendered that particular ground waived. *Id*. at 676-77.

Here, appellant expressly alleged the *Brady* violations in his 2012 petitions for post-conviction relief and for writ of actual innocence. Not only did appellant know of the potential *Brady* violations, he also knew that Judge Rasin was "inclined to grant" his request for post-conviction relief. Instead of pursuing that relief—presumably a vacation of his convictions—appellant voluntarily relinquished his post-conviction and actual innocence claims in exchange for a time-served sentence. Four years later, in 2016, appellant raised the same *Brady* violations in his *coram nobis* petition. In our view, appellant's case is governed by *Hyman*. Indeed, the circumstances here present a more compelling example of waiver than those in *Hyman*.

We hold that appellant's decision in 2012 to withdraw his *Brady* claims in exchange

for a time-served sentence constituted waiver under *Hyman*.[16] Accordingly, appellant was

precluded from raising those same claims in his 2016 petition for *coram nobis* relief.

> **JUDGMENT OF THE CIRCUIT COURT FOR BALTIMORE CITY AFFIRMED. COSTS TO BE PAID BY APPELLANT.**

---

[16] Although we have not discussed res judicata in our waiver discussion, we note the similarities. "*Res judicata* ('a thing adjudicated') is 'an affirmative defense [that] bar[s] the same parties from litigating a second lawsuit on the same claim, or any other claim arising from the same transaction or series of transactions that could have been—but was not—raised in the first suit.'" *Gonsalves v. Bingel*, 194 Md. App. 695, 709 (2010) (quoting *Anne Arundel Cty. Bd. of Educ. v. Norville*, 390 Md. 93, 106 (2005)) (internal quotation marks omitted). We follow the *Hyman* Court's lead in analyzing this case under principles of waiver rather than principles of res judicata.